# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

UNITED STATES OF AMERICA
*ex rel.* PAUL PIETSCHNER,

Plaintiff,

v.

KATHRYN PETRALIA;
ROBERT FROHWEIN; and
SPENCER ROBINSON,

Defendants.

Civil Action No.: 4:21-cv-110-SDJ

## DEFENDANT KATHRYN PETRALIA'S
## MOTION TO DISMISS
## <u>THE UNITED STATES' COMPLAINT IN INTERVENTION</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF ISSUES ................................................................................. 2

BACKGROUND .................................................................................................. 2

LEGAL STANDARDS ........................................................................................ 4

    A.   Rule 12(b)(2) and 12(b)(3) ....................................................................... 4

    B.   Rule 12(b)(6) ............................................................................................. 4

    C.   Rule 9(b) .................................................................................................... 5

ARGUMENT ........................................................................................................ 6

I.     THE COURT LACKS PERSONAL JURISDICTION OVER MS. PETRALIA ....................................... 6

II.    VENUE IS IMPROPER IN THIS DISTRICT ................................................................................. 9

III.  THE COMPLAINT FAILS TO STATE AN FCA CLAIM AGAINST MS. PETRALIA ....................... 11

    A.   The Complaint Fails To Allege That Ms. Petralia Submitted Or Caused The Submission Of Any False Claims ....................................................... 11

    B.   The Complaint Fails To Allege That Ms. Petralia Acted With The Requisite Scienter ... 15

IV.  THE COMPLAINT FAILS TO STATE COMMON LAW CLAIMS AGAINST MS. PETRALIA ............. 22

    A.   The Complaint Fails To Allege Unjust Enrichment ......................................................... 22

    B.   The Complaint Fails To Allege Mistake Of Fact .............................................................. 24

CONCLUSION .................................................................................................... 25

## <u>Table of Authorities</u>

**Page(s)**

**Federal Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004) ...................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................4-5, 13

*Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan*,
    97 F.3d 822 (5th Cir. 1996) ...................................................................................8

*SEC v. Berry*,
    580 F. Supp. 2d at 922 .....................................................................................6, 18

*Busch v. Buchman, Buchman & O'Brien, L. Firm*,
    11 F.3d 1255 (5th Cir. 1994) .................................................................................8

*Century Indem. Co. v. URS Corp.*,
    2009 WL 2446990 (E.D. Pa. Aug. 7, 2009) .......................................................23

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ...............................................................................19

*Conn Appliances, Inc. v. Williams*,
    936 F.3d 345 (5th Cir. 2019) .................................................................................4

*Cunningham v. CBC Conglomerate, LLC*,
    359 F. Supp. 3d 471 (E.D. Tex. 2019).................................................................7

*D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Dev., LLC*,
    463 F. Supp. 3d 713 (E.D. La. 2020) ..................................................................19

*Daniel v. Am. Bd. of Emerg. Med.*,
    428 F.3d 408, 429 (2d Cir. 2005),.......................................................................10

*DeJoria v. Maghreb Petroleum Expl., S.A.*,
    804 F.3d 373 (5th Cir. 2015) .................................................................................6

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) .................................................................................5

*ESPOT, Inc. v. MyVue Media, LLC*,
　492 F. Supp. 3d 672 (E.D. Tex. 2020) ........................................................8

*U.S. ex rel. Farmer v. City of Hous.*,
　523 F.3d 333 (5th Cir. 2008) ..................................................................16

*Fontenot v. Mullins Mfg. Co., Inc.*,
　85 F.3d 625 (5th Cir. 1996) ....................................................................8

*U.S. ex rel. Frey v. Health Mgmt. Sys., Inc.*,
　2023 WL 2563239 (S.D. Tex. Feb. 10, 2023) .........................................6

*Gearhart v. Express Scripts, Inc.*,
　422 F. Supp. 3d 1217 (E.D. Ky. 2019) ..................................................23

*Great-West Life & Annuity Ins. Co. v. Knudson*,
　534 U.S. 204 (2002)...............................................................................23

*U.S. ex rel. Grubbs v. Kanneganti*,
　565 F.3d 180 (5th Cir. 2009) ..............................................................5, 13

*Guidry v. Bank of LaPlace*,
　954 F.2d 278 (5th Cir. 1992) ..................................................................5

*U.S. v. Halifax Hosp. Med. Ctr.*,
　2013 WL 6017329 (M.D. Fla. Nov. 13, 2013) ................................... 24-25

*Hart v. Bayer Corp.*,
　199 F.3d 239 (5th Cir. 2000) ..............................................................5, 14

*U.S. ex rel. Hebert v. Dizney*,
　295 F. App'x 717 (5th Cir. 2008) ....................................................... 5-6

*Hernandez v. Ciba-Geigy Corp. USA*,
　200 F.R.D. 285 (S.D. Tex. 2001)............................................................5

*U.S. ex rel. Hueseman v. Pro. Compounding Centers of Am., Inc.*,
　664 F. Supp. 3d 722 (W.D. Tex. 2023)..................................................11

*U.S. ex rel. Jameson v. WBI Energy Transmission, Inc.*,
　2024 WL 3512126 (S.D. Tex. July 22, 2024)..........................................16

*U.S. ex rel. Johnson v. Kaner Med. Grp., P.A.*,
　641 F. App'x 391 (5th Cir. 2016) .................................................... 16-17

*Knight v. Standard Chartered Bank*,
　531 F. Supp. 3d 755 (S.D.N.Y. 2021)......................................................7

*U.S. v. Lakeway Reg'l Med. Ctr., LLC,*
    2020 WL 6146571 (W.D. Tex. Feb. 13, 2020)......................................................................6

*In re Loestrin 24 Fe Antitrust Litig.,*
    261 F. Supp. 3d 307 (D.R.I. 2017).................................................................................23

*LTV Educ. Sys., Inc. v. Bell,*
    862 F.2d 1168 (5th Cir. 1989) ......................................................................................25

*U.S. ex rel. McCarthy v. Straub Clinic and Hosp., Inc.,*
    140 F. Supp. 2d 1062 (D. Haw. 2001) ............................................................................7

*McFadin v. Gerber,*
    587 F.3d 753 (5th Cir. 2009) ..........................................................................................7

*McGinley v. Luv N' Care, Ltd.,*
    2019 WL 13218251 (W.D. La. May 6, 2019*)* .............................................................20

*U.S. v. Medica-Rents Co.,*
    285 F. Supp. 2d 742 (N.D. Tex. 2003) .........................................................................25

*U.S. v. Medica-Rents Co.,*
    2006 WL 247896 (N.D. Tex. Jan. 31, 2006), *aff'd sub nom. U.S. v. Medica-
Rents Co. Ltd.,* 2008 WL 3876307 (5th Cir. Aug. 19, 2008)........................................24

*Nguyen v. Excel Corp.,*
    197 F.3d 200 (5th Cir. 1999) ........................................................................................20

*Norsworthy v. Mystik Transp., Inc.,*
    430 F. Supp. 2d 631, 633 (E.D. Tex. 2006) ...................................................................4

*Owens v. Jastrow,*
    789 F.3d 529 (5th Cir. 2015) ..........................................................................................5

*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
    253 F.3d 865 (5th Cir. 2001) ..........................................................................................4

*U.S. v. Peters,*
    2024 WL 3378034 (E.D. Cal. July 11, 2024) ...............................................................22

*U.S. ex rel. Pilecki-Simko v. Chubb Inst.,*
    443 F. App'x 754 (3d Cir. 2011) ..................................................................................21

*U.S. ex rel. Purcell v. MWI Corp.,*
    807 F.3d 281 (D.C. Cir. 2015).......................................................................................15

*Rolls-Royce Corp. v. Heros, Inc.,*
    576 F. Supp. 2d 765 (N.D. Tex. 2008) ...........................................................................9

v

*U.S. ex rel. Schutte v. SuperValu Inc.,*
    598 U.S. 739 (2023)..............................................................................15-16

*U.S. v. Sci. Applications Int'l Corp.,*
    626 F.3d 1257 (D.C. Cir. 2010)...................................................................16

*U.S. v. Scophony Corp. of Am.,*
    333 U.S. 795 (1948)....................................................................................10

*Sefton v. Jew,*
    201 F. Supp. 2d 730 (W.D. Tex. 2001)..........................................................9

*Seiferth v. Helicopteros Atuneros, Inc.,*
    472 F.3d 266 (5th Cir. 2006) .........................................................................7

*U.S. ex rel. Silva v. VICI Mktg., LLC,*
    361 F. Supp. 3d 1245 (M.D. Fla. 2019) ...........................................22-23, 25

*Stuart v. Spademan,*
    772 F.2d 1185 (5th Cir. 1985) .......................................................................9

*U.S. ex rel. Sullivan v. Atrium Med. Corp.,*
    2014 WL 12879671 (W.D. Tex. Dec. 31, 2014) ...........................................8

*U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,*
    110 F.3d 861 (2d Cir. 1997)...........................................................................7

*U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,*
    976 F. Supp. 207 (S.D.N.Y. 1997) ................................................................8

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar,*
    579 U.S. 176 (2016)....................................................................................15

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.,*
    987 F.2d 429 (7th Cir. 1993) .......................................................................19

*Vermont Agency of Nat. Resources v. U.S. ex rel. Stevens,*
    529 U.S. 765 (2000)......................................................................................8

*U.S. v. Vernon Home Health,*
    21 F.3d 693 (5th Cir. 1994) .........................................................................22

*Washington v. Morad,*
    2016 WL 7187932 (E.D. La. Dec. 12, 2016)................................................8

**Federal Statutes**

31 U.S.C. §3732...................................................................................................7, 10

31 U.S.C. §3729...................................................................................................... *passim*

**Other Authorities**

Fed. R. Evid. 106 ..................................................................................................19

Fed. R. Civ. P. Rule 9(b)......................................................................... *passim*

Fed. R. Civ. P. Rule 12(b)(2)................................................................. *passim*

Fed. R. Civ. P. Rule 12(b)(3).............................................................1, 2, 4

Fed. R. Civ. P. Rule 12(b)(6).............................................................1, 2, 4

Defendant Kathryn Petralia by and through her undersigned counsel, respectfully submits this Motion to Dismiss ("Motion") the Complaint in Intervention ("Complaint") (ECF No. 40) filed by the United States of America, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(6), and 9(b).

## INTRODUCTION

In 2020, when the COVID-19 pandemic emerged as an existential economic threat to businesses and individuals across the United States, the Small Business Administration ("SBA") quickly rolled out an emergency relief program dubbed the Paycheck Protection Program ("PPP"). One of the lenders who assisted in implementing the PPP was Kabbage, a fintech company with a history of supporting small businesses' access to historically hard-to-obtain or prohibitively expensive capital, which Defendant Kathryn Petralia co-founded and for which she served as President for several years, including during the first round of the PPP.  Compl. ¶10.

Now, years later after a global economic collapse was avoided and with a revisionist view, the government has alleged that Ms. Petralia's conduct violated the False Claims Act ("FCA") and gives rise to liability under common law claims of unjust enrichment and mistake of payment.  In addition to the grounds for dismissal set forth in the Joint Motion, the government's claims against Ms. Petralia fail for several independent reasons specific to her.  *First*, there is no personal jurisdiction over Ms. Petralia in this district.  *Second*, with respect to the FCA claims, the Complaint does not plead with any particularity that Ms. Petralia personally submitted or caused someone else to submit any false claim or statement seeking payment from the government and fails to allege that she acted with the requisite scienter.  *Third,* with respect to the common law claims of unjust enrichment and mistake of fact, the Complaint fails to allege any benefit received by Ms. Petralia that is directly traceable to funds paid by the United States.  Accordingly, for the

reasons stated herein and in the Joint Motion, Ms. Petralia respectfully requests that the Complaint

be dismissed as to her in full.

## STATEMENT OF ISSUES

Ms. Petralia moves to dismiss with prejudice the Complaint as to her pursuant to Rules

12(b)(2), 12(b)(3), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure.[1]  The grounds for

relief are set forth below:

1. The Court lacks personal jurisdiction over Ms. Petralia.  Moreover, venue is improper.

2. The Complaint fails to state a claim for a violation of the FCA as to Ms. Petralia because it fails to allege facts establishing that Ms. Petralia submitted or caused to be submitted by Kabbage a false claim or statement to the United States.

3. The Complaint fails to state a claim for a violation of the FCA as to Ms. Petralia because it fails to allege facts establishing that Ms. Petralia acted with the requisite scienter under the FCA.

4. The Complaint fails to state a claim for unjust enrichment as to Ms. Petralia because it does not allege that Ms. Petralia received a benefit directly traceable to funds paid by the United States.

5. The Complaint fails to state a claim for mistake of payment as to Ms. Petralia because it does not allege that the United States made a payment to Ms. Petralia.

## BACKGROUND[2]

Ms. Petralia supplements the facts presented in the Joint Motion as follows.

Ms. Petralia co-founded Kabbage with Robert Frohwein in 2008 and served as the

company's Chief Operating Officer and later as President.  Compl. ¶¶57, 59.  When the COVID-

19 pandemic hit, Ms. Petralia pushed to deploy Kabbage's innovative systems to quickly help

small businesses in need of capital to survive the impending economic crisis.  *Id.* ¶66.

---

[1] Ms. Petralia incorporates the entirety of the Joint Motion.

[2] All factual references herein are taken from the Complaint, and allegations are assumed to be true for purposes of this Motion to Dismiss.  Ms. Petralia reserves the right to challenge any of the factual representations in the Complaint.

As Kabbage moved quickly to deploy needed capital to small businesses and abide by shifting federal requirements, Ms. Petralia addressed concerns as they were presented to her, referring them to the appropriate, qualified Kabbage employees for resolution.  For instance, as the Complaint acknowledges, when a journalist brought to her attention that a Kabbage sole-proprietor PPP borrower had allegedly received a loan worth over $1 million, Ms. Petralia forwarded the communication to Spencer Robinson, flagging the issue so he could address it.  *Id.* ¶174.  Similarly, when a Kabbage employee expressed concerns that a person with a stolen driver's license could pass Kabbage's identity verification process, Ms. Petralia informed Mr. Robinson that it "may be an issue," thereby directing him to take appropriate action.  *Id.* ¶243.  And when concerns were raised internally about potential fraudulent PPP borrowers, Ms. Petralia responded, "[t]he best thing we can do right now is actively and aggressively provide fraudulent applicants and recipients to the authorities," which she thereafter instructed employees to do.  *Id.* ¶¶271-72.  Throughout Kabbage's PPP participation, Ms. Petralia believed—and communicated to her staff—that Kabbage was "doing everything and more" that the SBA and applicable regulations required.  *Id.* ¶267.

Although Ms. Petralia supported Kabbage's efforts to participate as a loan processor and lender in the PPP, she was not directly involved in developing Kabbage's loan calculation methodology; the government alleges that responsibility for developing the methodology instead resided with employees on Kabbage's data strategy team who reported to Mr. Robinson.  *See id.* ¶¶88, 111, 116.  Likewise, Ms. Petralia was not personally involved in designing Kabbage's compliance systems, including those related to Bank Secrecy Act and Anti-Money Laundering ("BSA/AML") laws; the government alleges that responsibility for designing those systems resided with employees who the Complaint alleges reported to Mr. Robinson.  *See id.* ¶¶101, 103.

## LEGAL STANDARDS

### A.      Rule 12(b)(2) and 12(b)(3)

Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure require dismissal if the court lacks personal jurisdiction or venue, respectively, over the defendant.  Once challenged by a nonresident defendant, such as Ms. Petralia, the plaintiff bears the burden of establishing a prima facie case of personal jurisdiction, *see Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347-48 (5th Cir. 2019), and of presenting facts that establish venue.  *Norsworthy v. Mystik Transp., Inc.*, 430 F. Supp. 2d 631, 633 (E.D. Tex. 2006).  Moreover, the law does not require a court to accept as true conclusory jurisdictional allegations, even if uncontroverted.  *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

### B.      Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  A plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief'" with "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Rule 12(b)(6) requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although courts must accept a complaint's allegations as true for purposes of assessing a motion to dismiss, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action" are not entitled to such deference.  *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Where "allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should … be exposed at the

4

point of minimum expenditure of time and money by the parties and the court.'" *Id.* at 558.

     **C.**      **Rule 9(b)**

     The Fifth Circuit has held "that a complaint filed under the False Claims Act must meet the heightened pleading standard of Rule 9(b)," which requires a party to "state with particularity the circumstances constituting fraud." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009); Fed. R. Civ. P. 9(b). Specifically, Rule 9(b) requires a plaintiff pleading fraud to "set forth the who, what, when, and where before access to the discovery process is granted." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (cleaned up); *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (same). In the Fifth Circuit, Rule 9(b)'s heightened pleading standard must be applied "with bite and without apology." *Grubbs*, 565 F.3d at 185 (quotation omitted).

     With respect to individual defendants, "Rule 9(b) requires the plaintiff to allege *as to each individual defendant* the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 291 (S.D. Tex. 2001) (internal quotation omitted) (emphasis added); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (Rule 9(b) requires a plaintiff pleading fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent"). Generalized allegations against collective defendants do not satisfy Rule 9(b) because such allegations do not point with specificity to the "what, when, or where" of any individual false claim. *See, e.g.*, *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008). This higher standard of pleading "stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).

Pursuant to Rule 9(b), courts dismiss complaints with respect to individual defendants where the complaints fail to allege facts establishing a case against the individual defendants. For example, in *SEC v. Berry,* the court dismissed a securities fraud case against an individual defendant because the complaint rested on "conclusory pleadings that [the defendant] 'reviewed' and 'discussed' various [false] filings," which was insufficient to state a claim. 580 F. Supp. 2d 911, 922 (N.D. Cal. 2008). Likewise, in *Dizney*, the Fifth Circuit affirmed dismissal of an FCA complaint due to the plaintiffs' failure to plead the "identity of the corporate actor with particularity," in a case with one corporate and six individual defendants named in the complaint— noting that the plaintiffs had failed to specify "the identity of the person making the misrepresentation" beyond insufficient, generalized references to "defendants." 295 F. App'x at 722. *See also U.S. ex rel. Frey v. Health Mgmt. Sys., Inc.*, 2023 WL 2563239, at \*7-8 (S.D. Tex. Feb. 10, 2023) (finding the plaintiff failed to satisfy 9(b) by "lumping the four corporate Defendants together" and dismissing claims); *U.S. v. Lakeway Reg'l Med. Ctr., LLC*, 2020 WL 6146571, at \*2 (W.D. Tex. Feb. 13, 2020) (emphasizing the plaintiffs' insufficient pleading under 9(b) that failed to distinguish between individual defendants).

## ARGUMENT[3]

### I.    THE COURT LACKS PERSONAL JURISDICTION OVER MS. PETRALIA

The Complaint should be dismissed under Rule 12(b)(2) because it fails to establish the Court's personal jurisdiction over Ms. Petralia. "Personal jurisdiction consists of two components: service of process and amenability to jurisdiction." *DeJoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 386 (5th Cir. 2015). A defendant is subject to jurisdiction in a federal court if "(1)

---

[3] Ms. Petralia incorporates by reference the legal arguments made in Mr. Frohwein's and Mr. Robinson's individual briefs, to the extent they apply to Ms. Petralia.

the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause. . . ." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

For purposes of the due process analysis, there are two forms of personal jurisdiction: general and specific.  For an individual defendant, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Cunningham v. CBC Conglomerate*, LLC, 359 F. Supp. 3d 471, 478 (E.D. Tex. 2019) (internal citation omitted).  Ms. Petralia resides in Georgia, Compl. ¶10, and is thus not subject to general jurisdiction in Texas.  The test for specific personal jurisdiction, meanwhile, asks:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006).

That test applies even to cases under the False Claims Act.  Although the FCA permits nationwide service of process, *see* 31 U.S.C. §3732(a), that provision "has been likened to 'a form of long-arm statute.'"  *U.S. ex rel. McCarthy v. Straub Clinic and Hosp., Inc.*, 140 F. Supp. 2d 1062, 1071 (D. Haw. 2001) (quoting *U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 863 (2d Cir. 1997)).  In other words, the government must still establish that Ms. Petralia has minimum contacts with Texas to satisfy the constitutional requirements of due process. *See Knight v. Standard Chartered Bank*, 531 F. Supp. 3d 755, 765-69 (S.D.N.Y. 2021) (personal jurisdiction for FCA claim requires minimum contacts with state in which suit is filed).  Moreover, the FCA's nationwide service of process provision must be read in concert with its venue provision, because a summons must be issued by an "appropriate district court." 31 U.S.C. §3732;

7

*U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 976 F. Supp. 207, 210 (S.D.N.Y. 1997). Thus, under the FCA, as under RICO, courts interpret the statute as "requir[ing] a traditional minimum contacts analysis. *ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 685 (E.D. Tex. 2020).

Accordingly, the Court must assess personal jurisdiction with respect to minimum contacts *with the forum state,* despite the FCA's allowance of nationwide service. *See McCarthy*, 140 F. Supp. 2d at 1071; *Washington v. Morad*, 2016 WL 7187932 (E.D. La. Dec. 12, 2016) (finding that the court had personal jurisdiction over a defendant in an FCA claim because the defendant resides in the forum state); *U.S. ex rel. Sullivan v. Atrium Med. Corp.*, 2014 WL 12879671 at *13 (W.D. Tex. Dec. 31, 2014) (noting that notwithstanding the nationwide service of process provisions in the FCA, the court must still assess whether personal jurisdiction comports with due process).[4]

The Complaint contains no allegation that Ms. Petralia was directly involved in any actions relating to Texas, and jurisdiction here thus does not comport with due process. Instead of alleging personal conduct on Ms. Petralia's part, the government seeks to establish jurisdiction by

---

[4] Older Fifth Circuit cases suggesting that minimum contacts are assessed vis-à-vis the United States as a whole when a federal statute allows for nationwide service of process do not control here. First, those cases have never been applied to the FCA, nor to any claim brought under a similarly punitive civil statute. *See, e.g.*, *Busch v. Buchman, Buchman & O'Brien, L. Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (applying doctrine to claim brought under Section 78aa of The Securities Exchange Act); *Fontenot v. Mullins Mfg. Co., Inc.*, 85 F.3d 625, at *1 (5th Cir. 1996) (applying doctrine to claim brought under the Clayton Act); *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 827 (5th Cir. 1996) (applying doctrine to claim brought under ERISA). The FCA, unlike those other statutes, is "essentially punitive in nature." *Vermont Agency of Nat. Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 784 (2000). Because the FCA is punitive, due process concerns—which are at the heart of the personal jurisdiction analysis—are heightened. Second, the holding in those older cases is flawed in any event, because "personal jurisdiction and service of process [are] conceptually distinct issues." *Bellaire Gen. Hosp.*, 97 F.3d at 826 ("We fail to apprehend how personal jurisdiction can be separated from due process by Congressional enactment of nationwide service of process provisions."). And in any case, as explained above, minimum contacts with the forum state must be assessed because of the interaction between the FCA's venue and service of process provisions.

improperly imputing Kabbage's corporate actions in Texas to Ms. Petralia and the other two co-defendants.  *See* Compl. ¶6 ("Kabbage, under the direction and control of Defendants, approved and disbursed hundreds of PPP loans in this district, including to borrowers in Tyler, Plano, and Beaumont, Texas.").  The longstanding fiduciary shield doctrine, however, precludes any such imputation.  Under that doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation."  *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).[5]    Although the Complaint identifies a handful of allegedly fraudulent loan applications from Texas businesses that Kabbage submitted to the SBA, *see* Compl. ¶¶305, 317-318, 327, the government does not allege that Ms. Petralia was personally involved in submitting a single one of them.  Absent any such allegation, personal jurisdiction over Ms. Petralia cannot be exercised.

Accordingly, the Complaint fails to allege that Ms. Petralia has any contacts with Texas, let alone contacts sufficient to establish specific personal jurisdiction over her.[6]

## II.    VENUE IS IMPROPER IN THIS DISTRICT

Venue is also improper in this district as to Ms. Petralia.  The government states that venue is proper in the Eastern District of Texas because "Defendants transacted business in this district."  Compl. ¶7; 31 U.S.C. §3732(a).  But the Complaint does not allege that Ms. Petralia personally ever transacted business in the Eastern District of Texas (indeed, as noted *supra*, it fails to establish

---

[5] There is a narrow exception to the doctrine for a defendant who "allegedly committed an intentional tort directed at the forum state."  *Sefton v. Jew*, 201 F. Supp. 2d 730, 743 (W.D. Tex. 2001).  Because the government does not allege that Ms. Petralia committed any acts at all directed at Texas, let alone an intentional tort, that exception is inapplicable.  *Id.* at 742.

[6] Even if this Court were to determine it has personal jurisdiction with respect to the FCA claims because of the statute's nationwide service provision, it should still dismiss the common law claims where no such statutory basis exists.  *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765 (N.D. Tex. 2008); *see also Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant").

any personal contacts with Texas at all). The Complaint's only relevant allegations are that *Kabbage* approved loan applications for four borrowers located within the Eastern District of Texas. Compl. ¶¶317-318, 327. Nowhere does the Complaint allege that Ms. Petralia herself approved these loans, directed or played any role in their approval, or was even aware of their existence. As explained *supra*, Kabbage's business in the Eastern District of Texas cannot be imputed to individual executives or employees of Texas for jurisdictional purposes.

Indeed, the four loans are not even sufficient to establish that *Kabbage* itself is subject to venue in this district, let alone Ms. Petralia by imputation. Courts assessing whether a defendant "transacts business" within a district for venue purposes look to whether the business is "of any substantial character." *Daniel v. Am. Bd. of Emerg. Med.*, 428 F.3d 408, 429 (2d Cir. 2005) (citing *U.S. v. Scophony Corp. of Am.*, 333 U.S. 795 (1948)). Where business activity is *de minimis*—for instance where a company's revenue from a district is insignificant and the company does not maintain an office, employ agents, or "advertise or solicit applicants" within the district—venue is not proper. *Id*. at 430. Kabbage's business in the Eastern District of Texas was just that: *de minimis*. The Complaint identifies four loans approved from the district, while acknowledging that Kabbage facilitated $7 billion in PPP loans. Compl. ¶55. It does not plead any facts with respect to the proportion of loans or loan amounts attributable to borrowers in this district, and there is no suggestion anywhere in the Complaint that Kabbage maintained an office or any employees or advertised here. Accordingly, Kabbage is not subject to venue in the Eastern District of Texas; the same is true for Ms. Petralia *a fortiori*. For that reason, the Complaint should be dismissed.[7]

---

[7] Moreover, for the reasons stated in the individual brief filed by Mr. Frohwein, dismissal rather than transfer is appropriate.

### III. THE COMPLAINT FAILS TO STATE AN FCA CLAIM AGAINST MS. PETRALIA

In addition to the reasons set forth in the Joint Motion, the FCA claims should be dismissed as to Ms. Petralia for multiple independent reasons.

### A. The Complaint Fails To Allege That Ms. Petralia Submitted Or Caused The Submission Of Any False Claims

Counts I and II should be dismissed as to Ms. Petralia because the Complaint does not adequately plead that Ms. Petralia personally caused Kabbage to submit any false claims.  The FCA creates liability for a person who "knowingly presents, or causes to be presented" to the government "a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" paid or approved by the government.  31 U.S.C. §§3729(a)(1)(A), (B).  The government does not allege that Ms. Petralia herself submitted any false claims or statements.  Accordingly, the only way the Complaint could establish an FCA claim with respect to Ms. Petralia would be based upon allegations that Ms. Petralia personally *caused* others to submit false claims or statements to the SBA.  But the Complaint's allegations do not meet that standard either.  To the contrary, the Complaint strategically conflates the three defendants, offering conclusory allegations that "the defendants" caused submissions of false claims without any of the specific allegations against Ms. Petralia that Rule 9(b) and the relevant case law requires.

"Causation under the FCA requires proximate cause, not merely 'but for' cause."  *U.S. ex rel. Hueseman v. Pro. Compounding Centers of Am., Inc.*, 664 F. Supp. 3d 722, 752 (W.D. Tex. 2023) (quotations omitted).  Specifically, "[a] defendant's conduct may be found to have caused the submission of a claim for … reimbursement if the conduct was (1) a substantial factor in inducing providers to submit claims for reimbursement, and (2) if the submission of claims for reimbursement was reasonably foreseeable or anticipated as a natural consequence of [a]

11

defendant['s] conduct." *Id.* (citation omitted).

The government does not allege that Ms. Petralia's conduct was the proximate cause of Kabbage's submission of any—let alone "thousands"—of allegedly false claims and statements to the SBA from April 2020 to October 2020.  First, the Complaint does not allege how Ms. Petralia personally *caused* the submission of any false claims or statements to the SBA.  The Complaint's silence regarding Ms. Petralia's actions speaks volumes: There are no allegations that Ms. Petralia specifically "approved" the submission of any loan applications or other documents to the SBA,[8] or any allegations that Ms. Petralia was personally involved in or instructed anyone at Kabbage to submit a false claim.

Second, even as to the putatively representative examples of allegedly fraudulent loan applications the government relies upon, the Complaint does not allege that Ms. Petralia personally caused their submission to the government—or, indeed, that she played any role with respect to those applications whatsoever.  When alleging causation in the FCA context, it is a bedrock principle that a complaint satisfies Rule 9(b) only if it alleges *specific* instances in which a defendant allegedly caused others to submit false claims or statements to the government.  Conclusory allegations regarding broad swaths of unidentified false claims allegedly caused by the defendant are insufficient and warrant dismissal.

Here, while the government does provide a handful of examples of allegedly erroneous loan applications that Kabbage submitted, it does not allege that Ms. Petralia had anything to do

---

[8] This again contrasts to the allegations against others.  *See, e.g.*, Compl. ¶207 ("In another example, on or about April 22, 2020, Robinson approved submitting thousands of PPP loan guaranty applications to the SBA even though the applicants had failed an automated background check and before Kabbage had reviewed the applications to determine whether the borrowers were eligible.  He approved this so that Kabbage could approve loans more quickly and without having to go through the process of manual review.").

with a single one of them.  As to loans affected by the "SALT error," the government alleges four examples (Compl. ¶¶302-305), but does not allege that Ms. Petralia personally played any role in any of them; to the contrary, to the extent *anyone* is identified by name, it alleges only that "Robinson submitted the loan to the SBA on Kabbage's behalf" (*id*. ¶305).  The same is true with respect to the government's sampling of loans that allegedly erred with respect to the borrower's number of reported employees (*id*. ¶¶315-320), and with respect to loans that were allegedly submitted without the requisite lender loan review (*id*. ¶¶321-328).  *See, e.g.*, *id*. ¶328 ("Kabbage was the lender of record for these loans at the time of loan origination.  Robinson submitted them to the SBA on Kabbage's behalf.").  Absent a representative sample of loans that Ms. Petralia caused to be submitted, the government cannot carry its pleading burden as to her.

Finally, the remainder of the allegations that relate to causation are insufficient because they are conclusory and lack specificity.  The Complaint alleges, for instance, that Ms. Petralia allegedly "caused Kabbage" to "submi[t] false claims for processing fees, guaranty purchase payments, and forgiveness payments," *see, e.g.*, Compl. ¶78.  Similarly, the Complaint alleges that "[p]ayment of the false and fraudulent claims was a reasonable and foreseeable consequence of Defendants' conduct," *id*. ¶336, and that "[d]uring the period of April 1, 2020, to April 12, 2023, all Defendants knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims submitted to the United States, and payment of those false and fraudulent claims by the United States was a reasonable and foreseeable consequence of Defendants' statements and actions," *id*. ¶339.  These conclusory allegations that fail to identify each of the defendants with any particularity must be ignored when assessing whether the government has sufficiently pleaded its claims.  *See Twombly*, 550 U.S. at 555.  "Rule 9(b) must be applied with bite and without apology," *Grubbs*, 565 F.3d at 185, and this allegation does not

13

describe the "who, what, when, where" of the submission.  *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000).

This pleading defect is not limited to the specific examples of loans allegedly tainted with error.  To the contrary, the Complaint overwhelmingly contains allegations about Kabbage as a company, *see, e.g.*, Compl. ¶58, not the particular defendants who are party to this suit, and certainly not Ms. Petralia specifically.[9]  Thus, the majority of the Complaint fails to state *any* facts that would support the elements of an FCA claim against Ms. Petralia.

Beyond conclusory allegations, the Complaint contains many allegations related to the conduct of *others* at Kabbage as intervening actors, further highlighting the tenuous connection between Ms. Petralia and Kabbage's submission of claims and statements to the SBA.  For instance, with respect to the loan calculation methodology, the Complaint alleges that "Kabbage employees, supervised by Robinson, developed a methodology for calculating PPP loan amounts by identifying certain fields from IRS tax forms with certain eligible payroll costs from the CARES Act and PPP regulations" and that Mr. Robinson "approved the loan calculation methodology." Compl. ¶¶87-88.  According to these allegations, Ms. Petralia was two layers removed from the development of the loan calculation method, which allegedly was the precursor to the errors identified in the loan submissions.  And there is no allegation that Ms. Petralia was involved in developing, or even aware of, the calculation method, let alone any deficiencies.

Accordingly, the government has failed to allege facts establishing—with Rule 9(b) particularity—that Ms. Petralia personally caused the submission of even a single specific false

---

[9] Of the 364 paragraphs in the Complaint, only 71 paragraphs mention Ms. Petralia by name. *See* Compl. ¶¶11-12, 52-53, 64, 69, 85, 87-88, 91, 93, 95-96, 98, 104, 111, 115-116, 118-119, 122-124, 126, 128, 130, 133-134, 141, 149, 151-152, 158-162, 166, 168-169, 181-182, 193-194, 199, 201-202, 204, 206-212, 216-217, 221-223, 225-226, 230-236, 240, 245, 247-258, 262, 268-269, 273, 275, 277, 282-283, 285, 291, 304-305, 317-320, 326-328, 349, 351.

claim.  Counts I and II should therefore be dismissed as to her.

**B.      The Complaint Fails To Allege That Ms. Petralia Acted With The Requisite Scienter**

The government also fails to plead facts establishing that Ms. Petralia acted with the requisite scienter under the FCA, providing another independent basis to dismiss the claims.

**1.      The FCA's Scienter Standard Is "Rigorous" And Requires "Subjective" Intent**

The FCA defines "knowingly" to mean "that a person, with respect to [false] information," "(i) has actual knowledge of the information," "(ii) acts in deliberate ignorance of the truth or falsity of the information," or "(iii) acts in reckless disregard of the truth or falsity of the information."  31 U.S.C. §3729(b)(1).  "Deliberate ignorance" encompasses defendants "who are aware of a substantial risk that their statements are false, but who intentionally avoid taking steps to confirm the statement's truth or falsity," while "reckless disregard" captures defendants "who are conscious of a substantial and unjustified risk that their claims are false, but submit the claims anyway."  *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023).

The FCA's scienter standard is "rigorous," and the Supreme Court has admonished that it must be "strict[ly] enforce[d]" in order to alleviate concerns "about fair notice and open-ended liability" that would otherwise exist under the FCA.  *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 192 (2016).  "Strict enforcement of the FCA's knowledge requirement helps to ensure that innocent mistakes made in the absence of binding interpretive guidance are not converted into FCA liability, thereby avoiding the potential due process problems posed by 'penalizing a private party for violating a rule without first providing adequate notice of the substance of the rule.'"  *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287 (D.C. Cir. 2015).  Thus, the Fifth Circuit has explained that scienter under the FCA "is an elevated standard," such

that even "a finding of negligence or gross negligence not sufficient to satisfy the scienter requirement." *U.S. ex rel. Johnson v. Kaner Med. Grp., P.A.*, 641 F. App'x 391, 394 (5th Cir. 2016) (citing *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 338 (5th Cir. 2008)).  Rather, the FCA requires conduct that is akin to "aggravated gross negligence." *U.S. v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010).

As critically relevant here, the Supreme Court in *SuperValu* clarified that knowledge for purposes of the FCA is analyzed subjectively.  598 U.S. at 751; *see also U.S. ex rel. Jameson v. WBI Energy Transmission, Inc.*, 2024 WL 3512126, at *6 (S.D. Tex. July 22, 2024).  "The FCA's scienter element refers to [defendants'] knowledge and *subjective* beliefs—not to what an objectively reasonable person may have known or believed." *SuperValu*, 598 U.S. at 749 (emphasis added).  "What matters for an FCA case is whether the defendant knew the claim was false," *id.* at 743, a subjective inquiry that focuses on "what the defendant thought when submitting the false claim." *Id.* at 752.

### 2. The Complaint Fails To Establish Ms. Petralia's Subjective Intent

Given the unequivocally subjective focus of the FCA's scienter requirement, and the Supreme Court's admonition that the FCA's pleading requirements be strictly enforced, the government must plead—as to *each* category of allegedly false claim or statement—facts establishing that Ms. Petralia was aware, deliberately avoided learning, or was conscious of a substantial and unjustifiable risk that Kabbage's submissions to the SBA were false *at the time of submission*. *See SuperValu Inc.*, 598 U.S. at 752 ("[T]he focus is not . . . on post hoc interpretations[.]  It is instead on what the defendant knew when presenting the claim.").  The Complaint fails to clear this hurdle.

Here, the government alleges in only a conclusory fashion that Ms. Petralia knowingly

caused the submission of "thousands" of false claims for PPP processing fees, forgiveness payments, and guaranty payments and statements related to those payments to the SBA, during the PPP program from April to October 2020.  Compl. ¶¶4, 332-334, 339.  But given the evolving requirements of the PPP during the relevant time, *see* Joint Mot. at Background §C, specificity as to Ms. Petralia's knowledge of the governing requirements *at the specific time a claim was made* is necessary.  Moreover, even if one could identify which specific submissions the Complaint alleges Ms. Petralia was aware of, the Complaint fails to plead more than "negligence or gross negligence" on Ms. Petralia's part, which is insufficient under the FCA.  *See Johnson*, 641 F. App'x at 394.  For example, there are no allegations that Ms. Petralia discussed with others that Kabbage was submitting false claims and statements in violation of any SBA guidance or that she was warned to that effect.  Therefore, the Complaint fails to plead that Ms. Petralia possessed subjective knowledge of any false claim or statement.

In essence, the government is attempting to allege that Ms. Petralia was aware of false claims and submissions by virtue of her purported awareness of underlying errors with Kabbage's loan calculation methodology, namely the so-called "SALT error" and "income cap error", and alleged deficiencies with Kabbage's BSA/AML/KYC program.  But even if the Court were to indulge in the government's logical leap (which requires ignoring other contrary allegations in the Complaint, as explained *infra* Part III.B.3), the Complaint still does not allege Ms. Petralia had subjective knowledge of Kabbage's submission of allegedly false claims and statements to the SBA as part of the PPP.  There are no allegations that any Kabbage employees approached Ms. Petralia about problems with the company's loan-calculation methodology or fraudulent applications—let alone that she refused to address them.  Rather, the Complaint allegations demonstrate that Ms. Petralia diligently responded and directed her team to address any such issues

that may have been brought to her attention.  Indeed, when concerns about potentially fraudulent loan applications were raised to her, she responded: "The best thing we can do right now is actively and aggressively provide fraudulent applicants and recipients to the authorities," Compl. ¶271. There are no allegations suggesting that Ms. Petralia was aware that any of her directives were not followed through.

Instead, the Complaint improperly lumps the Defendants' knowledge together or imputes Kabbage's generalized corporate knowledge to Ms. Petralia.  For example, the government alleges: "*Defendants* knowingly used the PPP to defraud the SBA out of millions of dollars so they could line Kabbage's pockets, and in turn their own, in a time of a national crisis caused by the COVID-19 pandemic."  Compl. ¶47 (emphasis added).  Likewise, it alleges: "Under Defendants' control and direction, *Kabbage* knowingly miscalculated PPP loan amounts for borrowers in two ways: by double-counting employee-paid state and local taxes and including employees' annual wages over $100,000, in direct contradiction of the plain language of the CARES Act and SBA regulations."  *Id.*  (emphasis added).  Allegations regarding the knowledge of Kabbage are insufficient to establish that *Ms. Petralia* was personally and subjectively aware of any issues.

Under Rule 9(b), the government is required to plead all elements with respect to Ms. Petralia with particularity.  *See SEC v. Berry*, 580 F. Supp. 2d at 922.  Because it has failed to do so, dismissal is required.

### 3.  The Complaint Rests On Demonstrably False And Contradictory Allegations

The factual allegations from which any inference regarding scienter could be drawn in fact suggest that Ms. Petralia *did not know* that Kabbage was acting in a manner contrary to its obligations.  For example, the government alleges that Ms. Petralia was a member of a Slack channel wherein Kabbage employees raised an issue with Kabbage's loan calculation as it related

to SALT taxes on April 11, 2020.  Compl. ¶120.  The allegation is demonstrably false—Ms. Petralia was not a member of this Slack conversation identified in the Complaint.  *Compare id*. ¶120 *with* Exhibit 1.[10]  Moreover, even if Ms. Petralia had been a participant in the conversation, those with direct knowledge later provided assurances that the calculation was reviewed and approved by outside counsel.  *See* Exhibit 2 ("we've walked thru [sic] all this with outside counsel").  Ms. Petralia was entitled to rely on the representations of responsible Kabbage employees.  Accordingly, these allegations do not establish Ms. Petralia's awareness of the loan calculation issues or any false submissions.

Second, the government alleges that Mr. Frohwein and Ms. Petralia received an e-mail in April 2020 from a person representing himself to be a certified public accountant, stating that Kabbage's PPP application had an error.  Compl. ¶137.  This allegation erroneously implies that Ms. Petralia was alerted to the issue and failed to do anything about it.  On the contrary, as the Complaint itself notes, Ms. Petralia was assured by Mr. Robinson that this was not a new concern.  *Id*. ¶138.  Further correspondence on the same thread demonstrates that Ms. Petralia was assured by Mr. Robinson that the issue had been reviewed by legal counsel.  Exhibit 3 ("we've gone through this with council [sic]" and N.G. further said "we've walked thru all of this with outside

---

[10] Courts may consider exhibits attached to motions to dismiss when they "if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)).  The government explicitly quotes from these Slack communications in its Complaint, and they are central to its theory of liability.  Further, under the rule of completeness, the Court should consider the exhibits containing the Slack chats themselves, which identify which Kabbage employees participated in a given conversation.  Fed. R. Evid. 106; *see also D.H. Griffin Wrecking Co.*, *Inc. v. 1031 Canal Dev., LLC*, 463 F. Supp. 3d 713, 721-22 (E.D. La. 2020) (allowing a party to affix an email chain to a motion to dismiss where the plaintiff had included an attachment to that email as an exhibit to the complaint).

counsel").[11]  Once again, Ms. Petralia was entitled to rely on the representations of those Kabbage employees.  The Complaint does not allege that the issue was ever raised to Ms. Petralia again. Accordingly, the government's insinuation that Ms. Petralia subjectively believed there was an issue with the loan calculation methodology as a result of the accountant's correspondence is flatly contradicted by the full exchange.

Third, the government alleges that Ms. Petralia became aware of an error regarding income caps in the loan calculation on July 9, 2020,[12] when a journalist emailed her inquiring about a borrower with one employee who had received a loan of over $1 million.  Compl. ¶174.  As with the allegations described above, the inference sought in this allegation is refuted by the very document cited in the Complaint.  The Complaint alleges that in response to the July 9 email, Ms. Petralia took the allegation seriously and forwarded the email to Mr. Robinson, the Kabbage employee that the government alleges oversaw the loan calculation, delegating to him the responsibility for identifying and remedying any issue with the loan calculation.  *Id.*  The only reasonable inference from this exchange is that Ms. Petralia subjectively believed that Mr. Robinson's team had handled the problem.  The Complaint does not allege that the issue ever came up to Ms. Petralia again.

---

[11] For purposes of this motion, Ms. Petralia is not relying on an advice-of-counsel defense, nor waiving any privilege with respect to any advice that she or Kabbage received. Rather, she is simply asserting that—for purposes of evaluating the government's scienter allegations in the complaint—Ms. Petralia was informed by others of the *fact* that counsel had been consulted.  Ms. Petralia has thus not "reveal[ed] the substance of [her] communications with [her] attorneys to support waiver" because she makes no argument about the contents of any attorney-client communication with her attorney, stating only that she was informed that others at Kabbage had consulted with counsel. *McGinley v. Luv N' Care, Ltd.*, 2019 WL 13218251 at *5 (W.D. La. May 6, 2019*); see also Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999) (only the "the substance of the client's and attorney's discussions" and not "the general nature of services" implicates the attorney-client privilege).

[12] There are no allegations that Ms. Petralia was made aware of the loan cap error prior to July 9, 2020—several months into the PPP program.

Fourth, with respect to Kabbage's statements to the SBA regarding its BSA/AML program, the government alleges that Ms. Petralia was aware that it did not meet the PPP's requirements. The government alleges that Ms. Petralia was made aware of fraud issues by a Kabbage customer service representative and by a journalist.  Compl. ¶¶172, 174, 260.  But in both cases, Ms. Petralia forwarded the emails in question to Mr. Robinson to look into and address the concerns.  *See id*. ¶¶261 ("Petralia forwarded T.S.'s suggestions to Robinson."); *see id*. ¶¶172, 174 (Petralia forwarded the messages to Robinson).  To the extent Ms. Petralia became aware of any issues with PPP applications, she directed those inquiries to the Kabbage employees with responsibility to address them; there is no allegation that the issue was raised to Ms. Petralia again.

The Complaint's allegations with respect to Ms. Petralia are comparable to those deemed insufficient in *U.S. ex rel. Pilecki-Simko v. Chubb Inst.*, 443 F. App'x 754, 761 (3d Cir. 2011). There, the Third Circuit affirmed dismissal of an FCA complaint alleging that a school made misrepresentations to the Department of Education to secure funding under Title IV and the Higher Education Act.  *Id.* at 756.  The complaint attempted to establish scienter based on alleged knowledge that the school's students were not eligible under the Title IV program.  *Id.* at 756-57. That complaint, like the Complaint here, contained only conclusory allegations that the defendant knew the students were ineligible.  *Id.* at 760-61.  The court concluded that the complaint did not allow the court to "draw the reasonable inference" that the defendant was impliedly aware that the claims were false, because there were no allegations of *specific instances* in which the defendant acknowledged his awareness of the underlying ineligibility of the students for the Title IV program.  *Id.* at 761.  Similarly, the Complaint here does not allege specific instances where Ms. Petralia acknowledged that Kabbage was submitting false claims or statements to the SBA, nor that she was under the impression that any of the alleged loan calculation issues were leading to

the submission of false claims to the SBA.  The lack of such specific allegations is fatal to the Complaint against Ms. Petralia.

Because the Complaint fails to allege the requisite scienter as to Ms. Petralia, the Complaint should be dismissed as to Ms. Petralia.

## IV.    THE COMPLAINT FAILS TO STATE COMMON LAW CLAIMS AGAINST MS. PETRALIA

The government's common law claims of unjust enrichment (Count IV) and mistake of fact (Count V) also fail.[13]  First, "[b]ecause the government has failed to plead the underlying fraud with particularity, the unjust enrichment and payment by mistake claims—which are premised on that fraud—also fail."  *U.S. v. Peters*, 2024 WL 3378034 at *6 (E.D. Cal. July 11, 2024).  Second, for the reasons below, each common law claim independently fails on its own terms.

### A.    The Complaint Fails To Allege Unjust Enrichment

The government's unjust enrichment claim must be dismissed because it has not alleged a benefit received by Ms. Petralia that is directly traceable to funds paid by the United States.  To state a claim for common law unjust enrichment, the government must show that: "(1) a benefit was conferred, (2) the recipient was aware that a benefit was received; and (3) under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it."  *U.S. ex rel. Silva v. VICI Mktg., LLC*, 361 F. Supp. 3d 1245, 1257 (M.D. Fla. 2019).  "With a claim of unjust enrichment, a plaintiff seeks return of a benefit conferred on another whose retention of the benefit at the plaintiff's expense would be unconscionable."  *U.S. v. Medica-Rents Co.*, 2006 WL 247896 at *10 (N.D. Tex. Jan. 31, 2006), *aff'd sub nom. U.S. v. Medica-Rents Co. Ltd.*, 2008 WL 3876307 (5th Cir. Aug. 19, 2008).

---

[13] Common law claims are assessed under federal common law.  *U.S. v. Vernon Home Health*, 21 F.3d 693, 695 (5th Cir. 1994).

A claim for unjust enrichment seeks an equitable remedy in the "form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could *clearly be traced to particular funds* or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (emphasis added).  Thus, federal common law, like the law of many states, does not allow for "indirect unjust enrichment claims."  *See In re Loestrin 24 Fe Antitrust Litig.*, 261 F. Supp. 3d 307, 361 (D.R.I. 2017) (noting that many states require a "direct benefit" be conferred on defendant for an unjust enrichment claim).  Courts frequently dismiss unjust enrichment claims when there is no direct connection between the plaintiff's missing funds and the enrichment received by the defendant.  *See Gearhart v. Express Scripts, Inc.*, 422 F. Supp. 3d 1217 (E.D. Ky. 2019) (finding that plaintiff did not "directly confer a benefit" upon defendant where at "at least two steps" separated the two); *Silva*, 361 F. Supp. 3d at 1257-58 (dismissing unjust enrichment claim against defendant that did not directly benefit); *Century Indem. Co. v. URS Corp.*, 2009 WL 2446990 at *6-9 (E.D. Pa. Aug. 7, 2009) (rejecting an unjust enrichment claim as too remote where "any benefit from Plaintiff to Defendant was filtered through two independent layers of auditing").

The Complaint does not allege that in paying Kabbage PPP fees, the government conferred any direct benefit on Ms. Petralia.  Nor does the Complaint allege that Ms. Petralia personally benefited from PPP loan fees; any logical connection between the fees and any financial gain Ms. Petralia may have received is highly attenuated, making clear that Ms. Petralia received (at most) an *indirect* benefit that derived from the direct benefit that Kabbage received as the recipient of SBA fees.  The only financial gain the Complaint identifies is: (1) Ms. Petralia's salary as an executive of Kabbage; (2) the approximately $10 million she received for the sale of Kabbage to American Express; and (3) a retention bonus that American Express paid Ms. Petralia to remain

employed at American Express following the acquisition.  Compl. ¶¶79-81.  None of these benefits are directly connected to the PPP fees Kabbage received.  Ms. Petralia was entitled to her salary by virtue of her role as President of Kabbage, and thus her salary has no connection to the PPP fees paid by the government.  The value she received for the sale of Kabbage is even further removed from the government's PPP payments: American Express expressly purchased all of Kabbage's assets *other than* its PPP portfolio; moreover, the government has not attempted to (nor could it) connect the value Ms. Petralia received for the sale of Kabbage to the allegedly problematic PPP loans it issued within a months-long period in more than a decade of operation. And lastly, the retention fee Ms. Petralia received was consideration for her *continued* employment at American Express well after the loan applications at issue here were submitted and had nothing to do with Kabbage's participation in the PPP.  Accordingly, any payment Ms. Petralia received from Kabbage is too attenuated from payments received by Kabbage relating to the PPP program to support a claim of unjust enrichment.

In sum, the Complaint has failed to allege that Ms. Petralia received any direct benefit from Kabbage's purportedly false claims or statements made to the SBA; Count IV must be dismissed.

### B.    The Complaint Fails To Allege Mistake Of Fact

Count V fails for similar reasons.  To allege a claim of payment by mistake of fact, the government must plead that "(1) payments were made (2) under the belief that they were properly owed; (3) that belief being erroneously formed; and (4) the mistaken belief was material to the decision to pay." *U.S. v. Medica-Rents Co.*, 285 F. Supp. 2d 742, 776 (N.D. Tex. 2003), *aff'd* 2008 WL 3876307 (5th Cir. Aug. 19, 2008).  If those elements are met, the government is entitled to "reimbursement" for those payments. *Id.*; *see also U.S. v. Halifax Hosp. Med. Ctr.*, 2013 WL 6017329, at *7 (M.D. Fla. Nov. 13, 2013) ("The Government by appropriate action can recover

funds which its agents have wrongfully, erroneously, or illegally paid.").  But Ms. Petralia received no payment from the government to reimburse.

The government cannot prevail on its mistake of fact claim because it does not allege that it made any payments directly to Ms. Petralia.  While there is a narrow exception to this general rule allowing the government to pursue "repayment from a third party *into whose hands the mistaken payments flowed*," the exception applies only "where that party participated in and benefitted from the tainted transactions." *LTV Educ. Sys., Inc. v. Bell*, 862 F.2d 1168, 1175 (5th Cir. 1989) (emphasis added).  The exception is inapplicable because, as explained *supra* in Part IV.A, the government has not alleged that profits from PPP loans flowed into Ms. Petralia's hands or that she personally benefitted from such transactions.  *See Silva*, 361 F. Supp. 3d at 1256 (dismissing mistaken payment claim because there were "no non-conclusory allegations that the mistakenly-paid funds flowed through" the defendant).  The Court should thus dismiss Count V.

## CONCLUSION

For the reasons set forth above and in the Joint Motion, Ms. Petralia requests the Complaint be dismissed with prejudice in its entirety.  Ms. Petralia reserves the right to move to sever any surviving claims against her from claims against any of the remaining Defendants.

Dated: March 11, 2025

Respectfully submitted,

  /s/ Melissa R. Smith
Melissa R. Smith
Gillam & Smith LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

Anjan Sahni (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center, 250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
anjan.sahni@wilmerhale.com

Christopher E. Babbitt (*pro hac vice*)
Michaela S. Wilkes Klein (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Fax: (202) 663-6363
christopher.babbitt@wilmerhale.com
michaela.wilkesklein@wilmerhale.com

George P. Varghese (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000
george.varghese@wilmerhale.com

***Counsel for Kathryn Petralia***

26

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2025, I caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Dated: March 11, 2025                    Respectfully Submitted,

                                         _ /s/ Melissa R. Smith_
                                         Melissa R. Smith
                                         Gillam & Smith LLP
                                         303 South Washington Avenue
                                         Marshall, TX 75670
                                         Telephone: (903) 934-8450
                                         Fax: (903) 934-9257
                                         melissa@gillamsmithlaw.com