# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

UNITED STATES OF AMERICA, *ex rel.*
PAUL PIETSCHNER,

v.

KATHRYN PETRALIA, ROBERT
FROHWEIN, and SPENCER ROBINSON.

Case No. 4:21-cv-110-SDJ

**ORAL ARGUMENT REQUESTED**

### DEFENDANT ROBERT FROHWEIN'S MOTION TO DISMISS THE UNITED STATES OF AMERICA'S COMPLAINT IN INTERVENTION

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................... 1

STATEMENT OF ISSUES ...................................................................................... 3

BACKGROUND ....................................................................................................... 3

    I.     The Defendants ................................................................................................. 3

    II.    Mr. Frohwein Has No Relevant Contacts With the State of Texas ............................ 4

    III.   Kabbage and Its Role In the PPP .................................................................... 4

    IV.   The Complaint Does Not Allege Mr. Frohwein Knowingly Participated in Fraud on the SBA .................................................................................................................... 6

LEGAL STANDARD ............................................................................................... 7

    I.     Establishing Venue and Personal Jurisdiction ............................................. 7

    II.    Sufficiency of the Complaint ....................................................................... 8

ARGUMENT ............................................................................................................ 9

    I.     The Complaint Does Not Establish Venue in this District ........................... 9

    II.    This Court Lacks Personal Jurisdiction Over Mr. Frohwein ...................... 12

         A.    This Court Does Not Have General Jurisdiction Over Mr. Frohwein ............ 12

         B.    This Court Does Not Have Specific Jurisdiction Over Mr. Frohwein ............ 13

         C.    The Government Cannot Rely on Nationwide Contacts to Establish Personal Jurisdiction Over Mr. Frohwein in Texas ........................................................ 15

    III.   The Complaint Does Not State An FCA Claim Against Mr. Frohwein ..................... 17

         A.    The Complaint Does Not Sufficiently Allege That *Mr. Frohwein* Submitted, Or Caused the Submission of, False Claims or Statements ........................... 17

         B.    The Complaint Does Not Adequately Allege Mr. Frohwein's Scienter ......... 19

    IV.   The Complaint Fails to Allege That Mr. Frohwein Was Unjustly Enriched or Paid by Mistake ..................................................................................................................... 24

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...........................................................................6, 8

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)...............................................................................8

*Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.,*
  97 F.3d 822 (5th Cir. 1996) .................................................................15

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,*
  343 F.3d 719 (5th Cir. 2003) .................................................................8

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,*
  582 U.S. 255 (2017)..............................................................................13

*Busch v. Buchman, Buchman & O'Brien, L. Firm,*
  11 F.3d 1255 (5th Cir. 1994) ...............................................................15

*Bustos v. Lennon,*
  538 F. App'x 565 (5th Cir. 2013) .........................................................14

*U.S. ex rel. Butler v. Hughes Helicopters, Inc.,*
  71 F.3d 321 (9th Cir. 1995) .................................................................23

*Caldwell v. Palmetto State Sav. Bank of S.C.,*
  811 F.2d 916 (5th Cir. 1987) ...............................................................16

*U.S. ex rel. Colquitt v. Abbott Labs.,*
  858 F.3d 365 (5th Cir. 2017) .................................................................8

*Cunningham v. Assured Auto Grp.,*
  No. 4:20-CV-41, 2021 U.S. Dist. LEXIS 56888 (E.D. Tex. Mar. 2, 2021) ...........................14

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014).........................................................................12, 13

*Daniel v. Am. Bd. of Emergency Med.,*
  428 F.3d 408 (2d Cir. 2005)..................................................................16

*Ekeocha v. U.S. Dep't of State,*
  2024 U.S. Dist. LEXIS 206975 (N.D. Tex. Oct. 25, 2024)....................................11

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   490 F. Supp. 2d 784 (S.D. Tex. 2007) ...................................................................9

*U.S. ex rel. Farmer v. City of Hous.*,
   523 F.3d 333 (5th Cir. 2008) ..............................................................................20

*Gearhart v. Express Scripts, Inc.*,
   422 F. Supp. 3d 1217 (E.D. Ky. 2019) ................................................................25

*Gonzalez v. Fresenius Med. Care N. Am.*,
   689 F.3d 470 (5th Cir. 2012) ..............................................................................17

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) ..........................................................................16

*Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*,
   85 F.3d 201 (5th Cir. 1996) ................................................................................12

*U.S. ex rel. Haight v. RRSA (Commer. Div.), LLC*,
   No. 3:16-CV-1975-S, 2020 U.S. Dist. LEXIS 195267 (N.D. Tex. Oct. 20,
   2020) ...................................................................................................................18

*Health Choice Alliance, LLC v. Eli Lilly, Inc.*,
   No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986 (E.D. Tex. July 25, 2018) ...........9, 19

*Hoover Grp., Inc. v. Custom Metalcraft, Inc.*,
   84 F.3d 1408 (Fed. Cir. 1996) ............................................................................10

*U.S. ex rel. Johnson v. Kaner Med. Grp., P.A.*,
   641 F. App'x 391 (5th Cir. 2016) ........................................................................18

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) ..............................................................................12

*Jones v. Petty-Ray Geophysical Geosource, Inc.*,
   954 F.2d 1061 (5th Cir. 1992) ............................................................................12

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
   725 F.3d 718 (7th Cir. 2013) ..............................................................................16

*U.S. ex rel. Krawitt v. Infosys Techs. Ltd.*,
   372 F. Supp. 3d 1078 (N.D. Cal. 2019) ..............................................................22

*U.S. ex rel. Krohn v. Sun W. Servs., Inc.*,
   No. CIV-97-0644-JC/WWD, 2000 WL 36739959 (D.N.M. Apr. 11, 2000)...................15, 16

*U.S. ex rel. Lamers v. City of Green Bay*,
   168 F.3d 1013 (7th Cir. 1999) ............................................................................22

iv

*U.S. ex rel. Landis v. Tailwind Sports Corp.*,
    51 F. Supp. 3d 9 (D.D.C. 2014) ...........................................................................17, 19

*Luallen v. Higgs*,
    277 F. App'x 402 (5th Cir. 2008) (unpublished) ................................................15

*Marathon Oil Co. v. A.G. Ruhrgas*,
    182 F.3d 291 (5th Cir. 1999) ...............................................................................12

*Melder v. Morris*,
    27 F.3d 1097 (5th Cir. 1994) ..................................................................................8

*METX, LLC v. Wal-Mart Stores Tex., LLC*,
    62 F. Supp. 3d 569 (E.D. Tex. 2014) ...................................................................24

*U.S. ex rel. Porter v. Magnolia Health Plan, Inc.*,
    810 F. App'x 237 (5th Cir. 2020) ...........................................................................8

*U.S. ex rel. Purcell v. MWI Corp.*,
    807 F.3d 281 (D.C. Cir. 2015) ..............................................................................22

*Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*,
    No. 4:18-CV-371-ALM, 2019 WL 2524830 (E.D. Tex. June 19, 2019) .................7

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ................................................................................................22

*Saktides v. Cooper*,
    742 F. Supp. 382 (W.D. Tex. 1990) ......................................................................14

*Savoie v. Pritchard*,
    122 F.4th 185 (5th Cir. 2024) ...............................................................................14

*U.S. ex rel. Schutte v. SuperValu Inc.*,
    598 U.S. 739 (2023) ..............................................................................................22

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*,
    170 F. Supp. 3d 928 (E.D. Tex. 2016) ...........................................................7, 9, 21

*Seville v. Maersk Line, Ltd.*,
    53 F.4th 890 (5th Cir. 2022) .................................................................................11

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*,
    91 F.4th 364 (5th Cir. 2024) .................................................................................13

*U.S. ex rel. Silva v. VICI Mktg., LLC*,
    361 F. Supp. 3d 1245 (M.D. Fla. 2019) ...............................................................25

*Stuart v. Spademan*,
772 F.2d 1185 (5th Cir. 1985) ...............................................................................7, 14

*Sunbury Wire Rope Mfg. Co. v. U.S. Steel Corp.*,
230 F.2d 511 (3d Cir. 1956).........................................................................................10

*U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*,
976 F. Supp. 207 (S.D.N.Y. 1997) .................................................................9, 15, 16

*Trois v. Apple Tree Auction Ctr., Inc.*,
882 F.3d 485 (5th Cir. 2018) ...................................................................................3, 7

*U.S. v. Bornstein*, 423 U.S. 303 (1976)........................................................................17

*U.S. v. Browne*, 505 F.3d 1229 (11th Cir. 2007) .........................................................10

*U.S. v. Peters*, No. 2:24-cv-00287, 2024 WL 3378034 (E.D. Cal. July 11, 2024).......................24

*U.S. v. President & Fellows of Harvard Coll.*,
323 F. Supp. 2d 151 (D. Mass. 2004) ......................................................................17

*U.S. v. Southland Mgmt. Corp.*,
326 F.3d 669 (5th Cir. 2003) ...............................................................................19, 23

*U.S. v. Villaspring Health Care Ctr., Inc.*,
No. 3:11-43-DCR, 2011 WL 6337455 (E.D. Ky. Dec. 19, 2011) ...........................18

*Unimobil 84, Inc. v. Spurney*,
797 F.2d 214 (5th Cir. 1986) .......................................................................................8

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
579 U.S. 176 (2016)....................................................................................................18

*Urquilla-Diaz v. Kaplan Univ.*,
780 F.3d 1039 (11th Cir. 2015) ...........................................................................20, 21

*U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*,
903 F. Supp. 2d 473 (E.D. Tex. 2011), *rev'd on other grounds*, 727 F.3d 343
(5th Cir. 2013)..............................................................................................................19

*Walden v. Fiore*,
571 U.S. 277 (2014)....................................................................................................13

*U.S. ex rel. Williams v. Renal Care Grp., Inc.*,
696 F.3d 518 (6th Cir. 2012) ...............................................................................20, 21

**Statutes**

28 U.S.C. § 1391(b) ................................................................................................9

31 U.S.C. § 3729(a)-(b) ................................................................................17, 19

31 U.S.C. § 3732(a) ...........................................................................1, 9, 10, 16

Defendant Robert Frohwein by and through his undersigned counsel, respectfully submits this Motion to Dismiss ("Motion") the Complaint in Intervention ("Complaint") (ECF No. 40) filed by the United States of America ("Government"), pursuant to Federal Rules of Civil Procedure 12(b)(2) (lack of personal jurisdiction), 12(b)(3) (improper venue), and 12(b)(6) (failure to state a claim).

## INTRODUCTION

Up against a filing deadline and change in administration, the Government's complaint against Robert Frohwein, Kathryn Petralia, and Spencer Robinson (collectively, "Defendants")—former employees of Kabbage, Inc. ("Kabbage" or "Company")—was hastily brought in the wrong court, in the wrong state, and without allegations sufficient to state a claim against Mr. Frohwein personally.  Despite the critical role Kabbage played in helping small businesses survive the COVID-19 pandemic, the Complaint seeks to rewrite history and hold Mr. Frohwein personally liable for Kabbage's alleged submission of false claims during its participation in the Paycheck Protection Program ("PPP").  As described in Defendants' Joint Motion to Dismiss ("Joint Motion"), and for the additional reasons below, the Complaint must be dismissed in its entirety: The Complaint was not properly filed in this Court, the False Claims Act ("FCA") claims (Counts I-III) do not satisfy the heightened pleading standard of Rule 9(b), and the remaining claims (Counts IV-V) simply fail on their face.

*First*, venue is not proper in this district because none of the Defendants "can be found, resides, [or] transacts business" in this district, and no act "proscribed by [S]ection 3729" is alleged to have occurred here.  31 U.S.C. § 3732(a).  The Complaint alleges only that _Kabbage_ "transact_ed_ business in this district" in the past.  Compl. ¶¶ 6-7 (emphasis added).  But Section 3732(a) permits venue in this district only if one of the Defendants presently transacts business here.  31 U.S.C. §

1

3732(a).  Because the Complaint does not allege that any Defendant presently transacts business in this district (nor could it), the Complaint does not establish venue as to any of them.

*Second*, this Court does not have personal jurisdiction over Mr. Frohwein.  The Complaint fails to allege that Mr. Frohwein—a resident of the State of California—is "at home" in Texas.  Nor does the Complaint allege that Mr. Frohwein took any act in this State related to the claims at issue in this case.  Requiring Mr. Frohwein to defend himself in lengthy and expensive litigation in a state to which he has no connection would be unfair and unjust.

*Third*, the Complaint does not adequately plead that Mr. Frohwein knowingly participated in Kabbage's alleged submission of false claims to the Small Business Administration ("SBA").  Rather, the Complaint uses formulaic recitations of the elements of an FCA claim and improper group pleading to allege what "Kabbage" and the "Defendants" did without plausibly alleging anything about Mr. Frohwein's knowing, individual participation in the alleged fraud scheme.  Neither tactic satisfies the heightened pleading standard of Rule 9(b).  The few non-conclusory allegations that are specific to Mr. Frohwein describe innocent conduct germane to the position of Chief Executive Officer ("CEO"), but serving as CEO does not make a person liable under the FCA for the acts of others.

*Fourth and finally*, the two remaining claims for unjust enrichment and fraud by mistake, which are predicated on the same facts as the FCA claims, likewise fail to state a claim that meets the pleading standard of Rule 9(b).  The Complaint does not allege that Mr. Frohwein was unjustly enriched or paid by mistake by the SBA for Kabbage's participation in the PPP.  Like the claims that come before it, the Government seeks to impose individual liability where there is none.

Accordingly, for these reasons, and those set forth in Defendants' Joint Motion, Mr. Frohwein respectfully requests that the Court dismiss the Complaint with prejudice.

## STATEMENT OF ISSUES

Mr. Frohwein moves to dismiss the Complaint with prejudice pursuant to Rules 12(b)(2), (3), and (6).  The grounds for relief are set forth below:

1. The Complaint fails to allege facts to establish venue in this district.

2. The Complaint fails to allege facts to establish personal jurisdiction over Mr. Frohwein.

3. The Complaint fails to state an FCA claim against Mr. Frohwein with the particularity required by Rule 9(b) because (i) the factual allegations do not establish that he submitted, or caused the submission of, false claims or statements to the SBA, or (ii) that he acted with the requisite scienter.

4. The Complaint fails to state a claim for unjust enrichment or payment by mistake.

## BACKGROUND[1]

### I.    THE DEFENDANTS

Mr. Frohwein and his co-defendants are former employees of Kabbage, an Atlanta-based, Delaware-incorporated financial technology company that was founded in 2008 to provide the smallest and most under-served businesses with access to capital.  Compl. ¶ 57.  Kabbage facilitated loans to small businesses and consumers through its innovative online lending platform, which leveraged data from customers and public sources to accelerate and improve the underwriting process and help businesses get access to capital more quickly.  *Id.*  Mr. Frohwein served as Kabbage's CEO from its inception until October 2020, when American Express acquired the Company.  *Id.* ¶ 11.  Throughout that same time period, Ms. Petralia served as Kabbage's

---

[1] Mr. Frohwein incorporates by reference the Background set forth in Defendants' Joint Motion.  For purposes of this Motion, Mr. Frohwein accepts as true all well-pleaded allegations except to the extent they are construed to contradict the undisputed allegations made in the Defendants' declarations about their contacts with Texas.  *See, e.g.*, *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492-93 (5th Cir. 2018) (explaining that "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments" when reviewing a motion to dismiss under Rule 12(b) (citation omitted)).

President.  *Id.* ¶ 10.  Mr. Robinson joined Kabbage in 2010 and also left when the Company was

acquired by American Express in October 2020, at which point his title was "Head of Strategy."

*Id.* ¶ 12.

## II.    MR. FROHWEIN HAS NO RELEVANT CONTACTS WITH THE STATE OF TEXAS

Mr. Frohwein has never lived or worked in—and to this day does not have any relevant

contacts with—the State of Texas.  Mr. Frohwein resided and worked in Atlanta from the time of

Kabbage's founding until February 2022, when he relocated to California, where he now lives and

works.  Ex. 1 (Frohwein Declaration) ¶ 1.  Mr. Frohwein is not a resident of Texas; does not own

property in Texas; and does not transact business in Texas (nor did he at the time the Complaint

was filed).  *Id.* ¶¶ 1-2.  While he worked at Kabbage, Mr. Frohwein had no communications with

any PPP borrowers in Texas and did not review or approve loan applications for PPP borrowers in

Texas.  *Id.* ¶ 3.  As laid out in their concurrently filed individual motions to dismiss, Ms. Petralia

and Mr. Robinson also do not live, work, or transact business in Texas; and, while at Kabbage,

they both worked at Kabbage's Atlanta office.

## III.    KABBAGE AND ITS ROLE IN THE PPP

Shortly after the COVID-19 pandemic struck, on March 27, 2020, Congress passed $349

billion of funding for PPP loans through the Coronavirus Aid, Relief, and Economic Security

("CARES") Act.[2]  The guiding principle of the CARES Act was to get money into the hands of

business owners quickly through private lenders to prevent an otherwise catastrophic economic

recession.  The SBA Administrator stressed the need to move quickly, stating that "[s]peed is the

---

[2] Rather than create an entirely new framework and direct federal payment program, the CARES Act modified the existing SBA 7(a) program to enable PPP.  *See* CARES Act, Pub. L. No. 116-136, § 1102(a), 134 Stat. 281 (2020) (providing for the amendment of Section 7(a) of the Small Business Act (15 U.S.C. § 636(a))).

operative word."[3]  Given its expertise in small business lending, Kabbage was uniquely positioned to serve as a lender and to help provide emergency relief to small businesses.  Compl. ¶ 57. Kabbage submitted its application to become an authorized non-bank lender under the PPP on April 9, 2020, and was approved to be a direct lender on April 13, 2020.  *Id.* ¶¶ 51, 54.

In less than four months, between April 9, 2020 and August 8, 2020, Kabbage processed over $7 billion in PPP loans as both a direct lender and a lending service provider for its partner banks.  *Id.* ¶ 55.  As detailed in Defendants' Joint Motion, the government urged Kabbage to process PPP loans quickly.  *See* Joint Motion at Background § A.  The public record is replete with evidence that the government knew that borrowers would take advantage of the PPP's relaxed underwriting criteria, and that it accepted this risk when it designed a first-come, first-served program that had limited funding, directed lenders to rely on borrower attestations, and that was principally focused on getting funds into the hands of small businesses as quickly as possible to help them survive the unprecedented economic impact of the COVID-19 pandemic.  *See id.* §§ A-D.  Now, with the benefit of hindsight, the Government claims that some of the PPP loans Kabbage processed during this four-month period were inflated or fraudulent for one of three reasons:

1.  **SALT Issue**:  Kabbage allegedly inflated PPP loan amounts for certain borrowers by double-counting employees' state and local taxes ("SALT") ("SALT Issue"). *See* Compl. ¶¶ 105-46.

2.  **$100K Issue**:  Kabbage allegedly inflated PPP loan amounts for some borrowers by including annual per-employee compensation over $100,000 in calculating their average monthly payroll ("$100K Issue").  *See id.* ¶¶ 147-85.

---

[3] Press Release, SBA, *With $349 Billion in Emergency Small Business Capital Cleared, SBA and Treasury Begin Unprecedented Public-Private Mobilization Effort to Distribute Funds* (Apr. 2, 2020), https://www.sba.gov/article/2020/apr/02/349-billion-emergency-small-business-capital-cleared-sba-treasury-begin unprecedented-public-private-0.

3. **Failure to Comply with Lender Loan Review Requirements:** Kabbage purportedly failed to comply with PPP lender loan review requirements, including the alleged requirement that Kabbage (1) have a due diligence program sufficient to comply with Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") regulations or detect fraud, and (2) perform a good faith review of borrowers' PPP loan applications to assess loan eligibility.[4] *See id.* ¶¶ 186-285.

## IV. THE COMPLAINT DOES NOT ALLEGE MR. FROHWEIN KNOWINGLY PARTICIPATED IN FRAUD ON THE SBA

The Complaint is almost entirely focused on alleged misconduct by *Kabbage* and other employees that purportedly led to inflated and fraudulent loans being submitted to the SBA. Setting aside all conclusory allegations and irrelevant references to the fact that Mr. Frohwein invoked the Fifth Amendment when deposed in connection with this matter[5]—none of which are properly considered on a motion to dismiss[6]—the Complaint pleads next to no facts that are specific to Mr. Frohwein.  And none of those allegations reflect Mr. Frohwein's knowing involvement in a scheme to defraud the SBA.

The Complaint's sparse allegations boil down to the fact that Mr. Frohwein was Kabbage's CEO, and that, as such, he "direct[ed] and control[led]" Kabbage and was "responsible for overseeing all of Kabbage's employees and day-to-day operations," including the Company's participation in the PPP. *Id.* ¶¶ 2-3, 11, 70.  The Complaint does not allege how Mr. Frohwein personally and knowingly participated in a scheme to defraud the SBA.  Tellingly, the Complaint does not allege that Mr. Frohwein submitted PPP loan applications or other documentation to the SBA, or that he had any involvement in either the development of Kabbage's loan calculation

---

[4] Mr. Frohwein disputes the Government's interpretation of the PPP's lender requirements but is accepting that they are correct only for purposes of responding to this Motion.  Mr. Frohwein expressly reserves the right to dispute the Government's interpretation of the PPP should the Complaint survive the pleading stage.

[5] The Government deposed Mr. Frohwein on June 3, 2024 pursuant to a Civil Investigative Demand served upon him in the course of its investigation knowing that there was an open criminal investigation that precluded him from testifying at the time.  Compl. ¶ 85 n.3.  The Complaint improperly contains numerous allegations concerning Mr. Frohwein's Fifth Amendment invocation.  *See, e.g., id.* ¶¶ 85, 89, 93, 98, 126, 134, 141, 156, 166, 191, 200, 212.

[6] *See* Joint Motion at Argument § II; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (the Court must ignore all naked legal conclusions on a motion to dismiss).

methodology (including those calculations giving rise to the SALT or $100K Issues) or its fraud controls and BSA/AML program beyond his alleged general oversight of all Kabbage employees and company operations as CEO.

The only non-conclusory allegations related to Mr. Frohwein's involvement or knowledge of alleged misconduct are that he received a few communications in which others questioned Kabbage's PPP loans.  *Id.* ¶¶ 133, 137, 178.  But those communications, when read in context, reflect that Mr. Frohwein or his team appropriately addressed any concerns, which refutes any claim that Mr. Frohwein was aware of—much less involved in—any purported misconduct.  *See* Argument §§ III.B.1-2, *infra*.[7]

## **LEGAL STANDARD**

### I.   ESTABLISHING VENUE AND PERSONAL JURISDICTION

The Government bears the burden of establishing venue and personal jurisdiction over the Defendants on a motion to dismiss under Rules 12(b)(3) for improper venue and 12(b)(2) for lack of personal jurisdiction.  *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) ("When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."); *Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*, No. 4:18-CV-371-ALM, 2019 WL 2524830, at *1 (E.D. Tex. June 19, 2019) ("Once a defendant raises improper venue by motion, 'the burden of sustaining venue will be on [the] Plaintiff.'") (citation omitted).  In deciding these issues, the Court must accept as true only well-pleaded and uncontroverted facts.  However, the Court may also consider evidence outside the complaint.  *See, e.g.*, *Trois*, 882 F.3d at 492-93 ("[T]he court is

---

[7] *See Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)) (noting a court may consider documents attached to a motion to dismiss that are "central to claims referenced in the complaint").

permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments.") (citation omitted).

## II.        SUFFICIENCY OF THE COMPLAINT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must satisfy Rule 8(a) and contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 677-78 (citation omitted).  A plaintiff is not entitled to relief where well-pleaded facts only permit the court to infer the "mere possibility of misconduct." *Id.* at 679.  While a plaintiff need not include "detailed factual allegations," a complaint requires more than bald accusations or speculation.  *Twombly*, 550 U.S. at 555.  Conclusions, naked assertions, and formulaic recitations of the elements of a cause of action are also not sufficient and must be disregarded.  *Iqbal*, 556 U.S. at 678-80 (citing *Twombly*, 550 U.S. at 555, 557).

Above and beyond Rule 8(a)'s plausibility standard, FCA complaints, like all other complaints alleging fraud, must also satisfy Rule 9(b) and "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see U.S. ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 371 (5th Cir. 2017).   To meet this heightened standard, the Government "must set forth *specific facts* supporting an inference of fraud."  *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (Rule 9(b) requires "the who, what, when, where, and how to be laid out" with respect to a fraud claim) (citation omitted).

The Fifth Circuit applies Rule 9(b) "with bite and without apology."  *U.S. ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 240 (5th Cir. 2020) (citation omitted).  Where a case involves multiple defendants, the complaint must plead specific facts *as to each individual defendant* to meet Rule 9(b)'s heightened standard.  *See Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) (finding that general allegations which fail to state with particularity the

alleged wrongdoing of each separate defendant do not meet Rule 9(b)'s heightened pleading standard). "Allegations that lump all defendants together and fail to segregate the alleged wrongdoing of one from those of another do not satisfy [R]ule 9(b)." *Health Choice Alliance, LLC v. Eli Lilly*, *Inc.*, No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986, at \*46 (E.D. Tex. July 25, 2018) (citing *In re Urcarco Sec. Litig.*, 148 F.R.D. 561, 569 (N.D. Tex. 1993), *aff'd*, 27 F.3d 1097 (5th Cir. 1994)). Moreover, "invocation of the Fifth Amendment does not excuse [the plaintiff] from pleading with specificity" under Rule 9(b). *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 490 F. Supp. 2d 784, 825 (S.D. Tex. 2007).

In ruling on a motion to dismiss under Rule 12(b)(6), "[t]he court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'" *Script Sec. Sols. L.L.C.*, 170 F. Supp. 3d at 935 (quoting *Lone Star Fund V (U.S.) L.P.*, 594 F.3d at 387).

## ARGUMENT[8]

### I.    THE COMPLAINT DOES NOT ESTABLISH VENUE IN THIS DISTRICT

Venue is not proper under the FCA's venue provision, 31 U.S.C. § 3732(a), because it limits venue to a district in which one of the defendants "can be found, resides, transacts business, or in which any act proscribed by [S]ection 3729 occurred." 31 U.S.C. § 3732(a); *see also U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 976 F. Supp. 207, 210 (S.D.N.Y. 1997) (explaining how the first sentence in Section 3732(a) prescribes how to establish venue under the FCA). The Complaint makes only a conclusory allegation that "Defendants transacted business

---

[8] Mr. Frohwein incorporates by reference the legal arguments made in Ms. Petralia and Mr. Robinson's individual briefs, to the extent they relate to Mr. Frohwein.

in this district."  Compl. ¶ 7.[9]  This is both legally insufficient and factually false.

The plain terms of the FCA's venue provision allow this lawsuit be brought in a location where a defendant _presently_ "transacts business."  *See* 31 U.S.C. § 3732(a) (using "transacts" in the present tense); *see also U.S. v. Browne*, 505 F.3d 1229, 1250 (11th Cir. 2007) (holding a statute's use of present tense imposes a temporal limitation on its applicability).  The Government's allegation that the Defendants _transacted_ business in this district in the past is not enough under the plain meaning of the statute.  31 U.S.C. § 3732(a); *cf. Sunbury Wire Rope Mfg. Co. v. U.S. Steel Corp.*, 230 F.2d 511, 512-13 (3d Cir. 1956) (interpreting similar language in the Clayton Act and holding that the venue provision was not satisfied because the defendant stopped its forum-related business activities prior to the lawsuit being filed).  Nor would it make sense: Under the Government's approach, a district would forever be an appropriate venue merely because a defendant had at some point in the past transacted business there, even if unrelated to the cause of action.

Moreover, by pleading that the Defendants transacted business in Texas, the Government impermissibly attributes the activities of Kabbage with those of the Defendants.  That is, while borrowers in this district may have applied for PPP loans through _Kabbage_ (*see* Compl. ¶ 6), Kabbage is not a party to this lawsuit, and none of the Defendants are alleged to have taken any act in this district.  Because none of the Defendants personally transacted business in this district (*see* Background § II, *supra*), venue is improper here for this additional reason.  *See, e.g.*, *Hoover*

---

[9] While the Complaint also references 28 U.S.C. § 1391(b), which is the general venue statute, the Complaint does not provide any explanation as to which of the three prongs of Section 1391(b) would apply, and the allegation that Defendants transacted business in the district through Kabbage in no way satisfies any of the three prongs.  *See* 28 U.S.C. § 1391(b) (allowing venue to be sustained in one of three places:  "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action").

*Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) ("[V]enue as to corporate employees charged with personal liability for acts taken as individuals, not as the alter ego of the corporation, does not flow automatically to forums in which venue is proper as to the corporation."); *see also* 1A(2) J. Moore et al., *Moore's Federal Practice* ¶ 0.340 (2d ed. 1995) (explaining that venue requirements must be satisfied by defendants themselves).

While courts have discretion to transfer improperly filed cases to courts that do have venue, that would not be proper here because the Government could reasonably have foreseen that this district was an improper forum and transfer would not be in the "interest of justice." *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894-96 (5th Cir. 2022) (dismissing case on the basis of improper venue). This is not a case of a mistake that the Court should excuse because it was made by an inexperienced litigant or counsel. The Government chose to file this lawsuit in this district just three weeks before U.S. Attorney Damien Diggs resigned and issued two press releases about it.[10] Under these circumstances, and given the other deficiencies in the Complaint (*see* Argument §§ II-IV, *infra*), transfer would not be in the "interest of justice." *Seville*, 53 F.4th at 894. "[I]t is obviously not in the interest of justice to allow [§ 1406(a)] to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district." *Id.* (citation omitted); *see also Ekeocha v. U.S. Dep't of State*, 2024 U.S. Dist. LEXIS 206975, at *8-9 (N.D. Tex. Oct. 25, 2024) (holding that a

---

[10] The Government issued two press releases, including U.S. Attorney Diggs's resignation announcement where he was touted as holding individuals responsible for Kabbage's alleged fraud: "U.S. Attorney Diggs also demonstrated a commitment to holding individuals, not just corporations, responsible for defrauding the government. After obtaining a settlement with the bankrupt fintech company Kabbage, Inc. to receive a total unsubordinated general unsecured claim in the bankruptcy proceeding of up to $120 million, U.S. Attorney Diggs approved the United States' intervention against three former executives of Kabbage, Inc." Press Release, U.S. Attorney's Office, Eastern District of Texas, *U.S. Attorney Damien M. Diggs Announces Departure* (Jan. 10, 2025), https://www.justice.gov/usao-edtx/pr/us-attorney-damien-m-diggs-announces-departure (Diggs's resignation announcement); *see also* Press Release, U.S. Dep't of Just. Off. of Pub. Affairs, *United States Joins Lawsuit Against Former Executives of Kabbage Inc. Alleging False Claims Act Violations in Connection with Paycheck Protection Program Lending* (Dec. 20, 2024), https://www.justice.gov/archives/opa/pr/united-states-joins-lawsuit-against-former-executives-kabbage-inc-alleging-false-claims-act (Government first announcing a lawsuit was filed against Mr. Frohwein).

transfer would not aid in the interest of justice and that neither party "would be prejudiced if Plaintiff had to refile this case in a proper venue" because the case was in its "nascent stages").

## II.    THIS COURT LACKS PERSONAL JURISDICTION OVER MR. FROHWEIN

The Complaint also does not allege personal jurisdiction over Mr. Frohwein in the State of Texas.  For personal jurisdiction to fall within the boundaries of due process, the Government must show that:  (1) Mr. Frohwein purposefully availed himself of the privileges of conducting activities in Texas by establishing "minimum contacts" with Texas such that he would reasonably anticipate being haled into court in Texas; and (2) exercising jurisdiction would not offend traditional notions of fair play and substantial justice.  *See Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067-68 (5th Cir. 1992).  Personal jurisdiction can be general or specific.  *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996).  "General personal jurisdiction is found when a nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial."  *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999).  Specific personal jurisdiction, by contrast, is found when a nonresident defendant's contacts with the forum state arise from or are related to the cause of action.  *Id.*  This Court has neither over Mr. Frohwein.

### A.    This Court Does Not Have General Jurisdiction Over Mr. Frohwein

General jurisdiction exists only when the defendant's contacts with the forum state are so "continuous and systematic as to render them essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 127, 137 (2014) (internal citations and quotations omitted) (stating that the paradigm forum for the exercise of general jurisdiction is the individual's domicile); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (holding that substantial, continuous, and systematic contacts is a difficult standard to meet).  It is beyond

dispute that Mr. Frohwein is not "at home" in Texas.  The Complaint alleges that Mr. Frohwein resides in California (Compl. ¶ 11), and there is no allegation that he has any relationship to Texas. Mr. Frohwein confirms in an uncontested declaration that he is domiciled in California.  *See* Ex. 1 ¶ 1; *see also* Background § II.  For these reasons, this Court cannot exercise general personal jurisdiction over Mr. Frohwein.

### B.    This Court Does Not Have Specific Jurisdiction Over Mr. Frohwein

Specific jurisdiction, or "case-linked" jurisdiction, exists only when the suit "arises out of or relates to the defendant's contacts with the forum."  *Daimler AG*, 571 U.S. at 127 (internal citations omitted).   "[T]here must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (internal citations and quotations omitted).  This circuit applies a three-step test for determining specific personal jurisdiction:  (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."  *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024).  The Government's action against Mr. Frohwein fails each prong.

*First*, the Complaint fails to allege any contacts that Mr. Frohwein has with Texas.  Nor does the Complaint allege that Mr. Frohwein took any act in the State of Texas related to the claims at issue in this lawsuit.  He is not alleged to have talked to persons located in Texas, reviewed loan applications for borrowers located in Texas, or taken any act to disburse funds to persons in Texas. Similar to its venue allegation, the Complaint alleges personal jurisdiction based on the allegation

that Mr. Frohwein "through Kabbage, transacted business in this district." Compl. ¶ 6. The minimum contacts required to exercise personal jurisdiction can only be established based on "contacts that the 'defendant *himself*' creates." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). That Mr. Frohwein worked for a company that helped to provide loans to borrowers in Texas does not confer personal jurisdiction over him personally.

Moreover, even if Mr. Frohwein had taken acts in, or directed at, Texas, the fiduciary shield doctrine provides that any acts taken solely in his capacity as a corporate officer for Kabbage cannot form the basis for personal jurisdiction over him except under limited circumstances not relevant here.[11] *Stuart*, 772 F.2d at 1197. The fiduciary shield doctrine is justified because "'it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.'" *Saktides v. Cooper*, 742 F. Supp. 382, 385 (W.D. Tex. 1990) (quoting *Marine Midland Bank v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)).

*Second*, requiring Mr. Frohwein, a California resident with no personal connection to Texas, to defend himself in time-consuming and costly litigation in Texas would not be fair or reasonable. Specifically, forcing the Defendants to litigate this case in Texas where they are all non-residents with no meaningful contacts or familiarity with the forum would impose a significant and unreasonable burden on them. *See Bustos v. Lennon*, 538 F. App'x 565, 568 (5th Cir. 2013) (holding that personal jurisdiction fails to comport with "fair play and substantial justice" where all defendants live and work outside of Texas). This burden is particularly unjustified when there

---

[11] The fiduciary shield doctrine provides an exception for instances in which it is alleged that individual defendants are the alter ego of the corporation for which they work. *See Stuart*, 772 F.2d at 1197. The Government does not allege that Mr. Frohwein is the alter ego of Kabbage here, nor could it. *See Savoie v. Pritchard*, 122 F.4th 185, 192-93 (5th Cir. 2024) (alter ego requires "control of internal business operations and affairs . . . to a greater degree 'than that normally associated with common ownership and directorship' such that [the defendant] and [the company] 'cease to be separate.'").

is no reason the Government must litigate this case in Texas as compared to any other state—like Georgia, where Kabbage was based and where each of the Defendants lived and worked at the time of the events giving rise to the claims at issue in this case (*see* Background §§ I-II).  *See Cunningham v. Assured Auto Grp.*, No. 4:20-CV-41, 2021 U.S. Dist. LEXIS 56888, at *16 (E.D. Tex. Mar. 2, 2021) ("Forcing the Company and Individual Defendants, all non-residents of Texas who have no meaningful contacts with Texas, to defend a lawsuit in Texas when Plaintiff has not supported allegations that the Company or Individual Defendants aim any conduct at Texas as compared to any other state would impose an unjustified and unconstitutional burden on the Company and Individual Defendants.").

For these reasons, this Court cannot exercise specific personal jurisdiction over Mr. Frohwein in the State of Texas.

### C.    The Government Cannot Rely on Nationwide Contacts to Establish Personal Jurisdiction Over Mr. Frohwein in Texas

The Government may argue that the Court should consider Mr. Frohwein's minimum contacts with the United States in deciding whether it has personal jurisdiction.  But the Fifth Circuit caselaw that applies a "national contacts" test for personal jurisdiction is inapplicable because it does not consider the FCA or involve a nationwide service of process clause that is dependent on first establishing proper venue.  *See generally Busch v. Buchman, Buchman & O'Brien, L. Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (applying national contacts test in a case brought under the Exchange Act); *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 826 (5th Cir. 1996) (applying a national contacts test in ERISA case while notably disagreeing with the holding in *Busch* permitting such a test); *see also Luallen v. Higgs*, 277 F. App'x 402, 405 (5th Cir. 2008) (unpublished) (questioning but following *Busch*).

Unlike ERISA and the Exchange Act, the FCA only permits nationwide service of process

when the summons issues from an "appropriate court," meaning "one in which venue is appropriate as described in the first sentence." *U.S. ex rel. Krohn v. Sun W. Servs., Inc.*, No. CIV-97-0644-JC/WWD, 2000 WL 36739959, at *6 (D.N.M. Apr. 11, 2000); *see also Thistlethwaite*, 976 F. Supp. at 210 (likewise explaining that "'appropriate' refers back to the first sentence of [S]ection 3732(a), which describes where venue is appropriate."). Thus, this sentence "limits the exercise of jurisdiction by providing that while a summons may be served anywhere, it may issue only from an appropriate district court." *Krohn*, 2000 WL 36739959, at *6; *see also Thistlethwaite*, 976 F. Supp. at 210. Because the Government has brought this case in an improper venue and, therefore, has not satisfied the venue provision in Section 3732(a), there is no statutory basis for nationwide service of process and, therefore, a national contacts test cannot be applied. *Cf. Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 918 (5th Cir. 1987) (providing for nationwide service of process only after certain requirements are met).[12]

As a result, the relevant inquiry is whether Mr. Frohwein has minimum contacts with the State of Texas. He does not (*see* Argument § I.A-B, *supra*), and thus, this Court has no personal jurisdiction over him.

---

[12] In *Caldwell*, the Fifth Circuit discussed the interplay between venue and personal jurisdiction in the context of the RICO statute. There, the plaintiffs argued that a Texas district court had personal jurisdiction over nonresident defendants because RICO provides for nationwide service of process. *Id.* at 918. The Fifth Circuit, however, noted Section 1965(a)'s requirement that civil actions be brought where a defendant "resides, is found, has an agent, or transacts his affairs." *Id.* (citing 18 U.S.C. § 1965(a)). Because none of the nonresident defendants in *Caldwell* conducted business in Texas, the court concluded that RICO could not provide a basis for personal jurisdiction. *Id.* While the FCA's venue and nationwide service of process provisions are distinct (and arguably more stringent), the same logic applies here. *Id.*; *cf. Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) (holding that the Clayton Act's worldwide service of process clause "may be invoked to establish personal jurisdiction *only* when the requirements of the section's venue provision are satisfied") (emphasis added); *accord KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 726-28 (7th Cir. 2013); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000).

### III.    THE COMPLAINT DOES NOT STATE AN FCA CLAIM AGAINST MR. FROHWEIN

The Government does not allege that Mr. Frohwein personally caused the submission of any false claim, made any false statement, or engaged in any fraudulent conduct with the requisite scienter.  To state a cause of action under the FCA, the Government must plead with particularity that there (1) was a false statement or fraudulent course of conduct (2) made or carried out with the requisite scienter (3) that was material and (4) caused the government to pay out money.  *See Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir. 2012).

#### A.    The Complaint Does Not Sufficiently Allege That <u>*Mr. Frohwein*</u> Submitted, Or Caused the Submission of, False Claims or Statements

To prevail under the FCA, the Government must plead with particularity Mr. Frohwein's personal, knowing involvement in the submission of false claims.  31 U.S.C. § 3729(a)(1)(A).  The FCA indisputably requires *personal participation* in the submission of false claims.  *See, e.g.*, *U.S. v. Bornstein*, 423 U.S. 303, 312 (1976) ("The [FCA], in short, penalizes a person for *his own* acts, not for the acts of someone else.") (emphasis added).  Courts have emphasized that FCA liability must be based on *personal* misconduct.  *See*, *e.g.*, *U.S. ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 50 (D.D.C. 2014) ("[T]o impose liability under the FCA, particularly where a plaintiff alleges that the defendant 'caused' the submission of false claims," the defendant must have done an "affirmative[] act."); *U.S. v. President & Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 186-87 (D. Mass. 2004) ("To 'cause' the presentation of false claims under the FCA, some degree of participation in the claims process is required.").  Even "mere knowledge of the submission of claims and knowledge of the falsity of those claims is insufficient."  *President & Fellows of Harvard Coll.*, 323 F. Supp. 2d at 186.

Instead of alleging Mr. Frohwein's specific, personal involvement in the supposed fraud scheme, the Complaint repeatedly refers to:  (1) alleged acts by Kabbage or other Kabbage

employees,[13] and (2) conclusory allegations about the "Defendants."[14]  *See, e.g.*, Compl. ¶¶ 290 ("*Kabbage* submitted and caused the submission of false claims to the SBA") (emphasis added) & 298 ("*Defendants* caused the submission of false claims") (emphasis added).  The few allegations that *are* specific to Mr. Frohwein largely describe ordinary conduct relating to his role as Kabbage's CEO.  *See, e.g.*, Compl. ¶¶ 3, 70 (alleging that Mr. Frohwein "direct[ed] and control[led]" the Company and was "responsible for overseeing" all employees and day-to-day operations).

The Government cannot sustain an FCA claim against Mr. Frohwein just because he was CEO of a company that allegedly submitted false claims or made false statements.  Courts have dismissed cases brought on similar theories.  *See, e.g.*, *U.S. ex rel. Haight v. RRSA (Commer. Div.), LLC*, No. 3:16-CV-1975-S, 2020 U.S. Dist. LEXIS 195267, at *13 (N.D. Tex. Oct. 20, 2020) (dismissing claims against individual despite allegations that she (1) "exercise[ed] control over" certain of the defendant corporations and (2) was chief financial officer and "involved 'in all aspects of the business'" of a defendant corporation); *U.S. v. Villaspring Health Care Ctr., Inc.*, No. 3:11-43-DCR, 2011 WL 6337455, at *9-10 (E.D. Ky. Dec. 19, 2011) (dismissing claims against CEO because "'direct and indirect control of [a company]' is not enough" to create FCA liability).  FCA liability only attaches to "those who *present or directly induce* the submission of false or fraudulent claims," which the Complaint does not allege Mr. Frohwein has done here.

---

[13] *See* Compl. ¶¶ 10, 12, 18, 45, 51-59, 61, 63, 64, 67, 69, 73-75, 77, 81-83, 85-92, 94-97, 101, 103-05, 108-25, 127-31, 135, 140, 143-46, 148-55, 158-62, 164, 167, 169, 172-76, 180-85, 187, 189, 193-95, 201, 202, 204-11, 213-17, 221, 223, 225, 227, 230-46, 248-55, 257, 260, 261, 263-69, 272, 273, 275, 277, 278, 282, 284-87, 289-91, 294, 296, 297, 302-06, 310, 314-21, 324-29, 341, 350, 351 (allegations concerning conduct by Kabbage and/or other Kabbage employees who are not parties to this case).

[14] *See* Compl. ¶¶ 2-4, 6-7, 9, 47-51, 59-60, 62-63, 65-66, 68, 70-71, 73-81, 84, 99, 100, 102-04, 120, 131-32, 139, 142, 147, 157, 165, 167, 170-71, 177, 179, 186, 188, 190, 192, 196, 198-99, 203, 205-06, 211, 218-20, 224, 228-29, 247, 258-59, 274, 276, 281, 288, 290, 293, 295-96, 298-300, 302-05, 307-08, 311-13, 315-20, 322-23, 325-29, 331-34, 336, 339-40, 342, 344, 347-48, 353-54, 356-59, 362-64 (allegations concerning conduct by Defendants collectively).

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 182 (2016) (emphasis added).

### B.    The Complaint Does Not Adequately Allege Mr. Frohwein's Scienter

The Government has not adequately pled Mr. Frohwein's scienter either.  Scienter under the FCA "is an elevated standard" that must be "strict[ly] enforce[d]."  *U.S. ex rel. Johnson v. Kaner Med. Grp., P.A.*, 641 F. App'x 391, 394 (5th Cir. 2016) (quotations omitted); *Escobar*, 579 U.S. at 192.  To satisfy the FCA's knowledge element, the Government must allege that Mr. Frohwein acted with "actual knowledge," "deliberate ignorance," or "in reckless disregard of the truth or falsity of the information" that allegedly renders a claim false.  31 U.S.C. § 3729(b).  Mere "negligence" and "innocent mistakes" do not suffice.  *U.S. v. Southland Mgmt. Corp.*, 326 F.3d 669, 681-82 (5th Cir. 2003) (Jones, J., concurring).  "'Although Rule 9(b) expressly allows scienter to be "averred generally," simple allegations that [a] defendant[] possess[es] fraudulent intent will not satisfy Rule 9(b).'"  *Health Choice Alliance,* LLC, No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986, at *5 (quoting *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 903 F. Supp. 2d 473, 485 (E.D. Tex. 2011), *rev'd on other grounds*, 727 F.3d 343 (5th Cir. 2013)).  The Government "'must set forth *specific facts* supporting an inference of fraud.'"  *Vavra*, 903 F. Supp. 2d at 485 (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)) (emphasis original).  And, importantly, the Government cannot establish the FCA's scienter requirement solely based on the fact that a defendant "had a high-ranking position," as such a "loose" type of constructive knowledge is "inconsistent with the Act's language structure, and purpose."  *Landis*, 51 F. Supp. 3d at 52 (citations and quotations omitted).

The Government has not met this burden.  Rather, like the rest of its allegations, the Complaint's allegations of "knowledge" improperly attribute to Mr. Frohwein the collective

knowledge of other persons and Kabbage.[15]  The Complaint contains no allegations from which a factfinder could infer that Mr. Frohwein knew, or was deliberate or reckless in not knowing, that Kabbage was submitting false or fraudulent claims to the SBA.  We address each of these allegations, in turn, below.

### 1.    The Complaint Does Not Allege That Mr. Frohwein Had Knowledge of the SALT Issue

In an attempt to tie Mr. Frohwein to the SALT Issue, the Complaint references two instances in which a question about Kabbage's loan calculation methodology was raised to him. Specifically, the Complaint references an April 20, 2020, email from one of Kabbage's lending partners to Mr. Frohwein that relays a question from a PPP borrower about Kabbage's use of state and local income taxes in its loan calculation (*see* Compl. ¶ 133; Ex. 2 at 1-2), and an April 24, 2020 voicemail from a CPA alleging that Kabbage's loan calculation was flawed (*see* Compl. ¶ 137; Ex. 3 at 1-3).  Neither of these communications shows that Mr. Frohwein knew that there was a problem with Kabbage's loan calculation that was causing loan amounts to be inflated.

Indeed, a review of the communications shows that, contrary to what the Complaint alleges (*see* Compl. ¶ 136), Mr. Frohwein instructed his team to investigate the questions that were raised to him, and that he was subsequently assured that there was no error in Kabbage's loan calculation methodology.  *See* Ex. 2 at 1; Ex. 3 at 1-3.  This is the exact opposite of acting with "reckless disregard," the *lowest* scienter threshold under the FCA.  *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 343 (5th Cir. 2008) ("[T]he FCA's onerous *mens rea* requirement [is], <u>*at a minimum*</u>,

---

[15] *See, e.g.*, Compl. ¶¶ 62, 84, 103, 147, 167, 188, 190, 196, 206, 219-20, 228-29, 293, 296, 308 (allegations concerning what "<u>*Defendants*</u> knew"); ¶¶ 2, 315-20, 325-29 (allegations concerning what "<u>*Kabbage*</u> knew").  For example, the Complaint contains alleges that "<u>*Defendants*</u> knew that Kabbage was systematically approving fraudulent PPP loans and disbursing funds to fraudulent PPP borrowers" (Compl. ¶ 228), and that "<u>*Kabbage*</u> knowingly inflated loan amounts of tens of thousands of PPP loans by systematically double-counting employees' state and local taxes [ ] and by including annual per-employee compensation in excess of $100,000 in calculating borrowers' average monthly payroll, contrary to statute and SBA regulations" (*id.* ¶ 2).

reckless indifference." (emphasis added)).  Courts do not find FCA violations when defendants follow up on reported issues, as Mr. Frohwein did.  *See, e.g.*, *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058, 1061-62 (11th Cir. 2015) (finding a CEO who "relied on the opinions of his subordinates, including those charged with compliance, and had no reason to believe that [the company's] policies violated the [relevant] regulations" did not meet the reckless disregard standard); *U.S. ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 531 (6th Cir. 2012) (concluding that defendants demonstrated a lack of scienter by "consistently s[eeking] clarification on the issue").

## 2.    The Complaint Does Not Allege That Mr. Frohwein Had Knowledge of the $100K Issue

The Complaint lodges two specific allegations that purportedly put Mr. Frohwein on notice of the $100K Issue, but neither establishes that he acted with actual knowledge or even reckless disregard of the alleged issue.

*First*, the Complaint alleges that Mr. Frohwein received a draft report from consultant Alvarez & Marsal ("A&M") who "recommended that Kabbage update the language in its loan calculation procedures regarding compensation of an individual employee in excess of $100,000 per year."  Compl. ¶ 168.  But the Complaint does _not_ allege that A&M told Kabbage that its loan calculation procedure _was incorrect_.  As such, this claim cannot plausibly be interpreted to have put Mr. Frohwein on notice of the alleged $100K Issue.

*Second*, the Complaint alleges that on July 16, 2020, a Kabbage employee copied Mr. Frohwein on a forwarded email from a journalist who inquired about SBA data reflecting that Kabbage had approved loans for borrowers who did not qualify for the loan amounts.  *Id.* ¶ 178. Yet the email underlying this allegation demonstrates that Mr. Frohwein's team investigated the journalist's concerns and reported that they were unfounded.  Ex. 4 at 1-2; *see also Script Sec.*

*Sols. L.L.C.*, 170 F. Supp. 3d at 935 (noting a court may consider documents attached to a motion to dismiss that are central to claims referenced in the complaint).  As such, this email does not establish that Mr. Frohwein acted with "reckless disregard of" the $100K Issue, let alone with "actual knowledge" or "deliberate ignorance."  *See, e.g.*, *Urquilla-Diaz*, 780 F.3d at 1058, 1061-62 (defendant did not act with the reckless disregard because he relied on subordinates and had no reason to believe there was a violation); *Williams*, 696 F.3d at 531 (defendants demonstrated a lack of scienter by "consistently s[eeking] clarification on the issue").

### 3.    The Complaint Does Not Allege That Mr. Frohwein Knew That Kabbage Failed to Comply With PPP Lender Requirements

The Complaint also does not allege that Mr. Frohwein knew that Kabbage failed to comply with PPP lending requirements at the time Kabbage submitted allegedly false claims.  *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023).[16]  The Complaint alleges that Kabbage failed to comply with the requirement that PPP lenders (1) have a BSA/AML program "equivalent to that of a comparable federally regulated institution" (Compl. ¶ 45), and (2) perform a "good faith review" of borrowers' PPP applications and supporting documentation (*id.* ¶ 48).  But, notably, the Complaint does not explain what these requirements mean.  This is unsurprising.  The PPP was haphazardly rolled out at the height of the COVID-19 pandemic, and the government's guidance to lenders has widely been criticized as unclear, insufficient, and ever-changing.  *See* Joint Motion at Background § C.

Because the PPP lender requirements were so widely regarded as vague (*see id.*), one cannot reasonably infer that Mr. Frohwein nor anyone else could have *knowingly* failed to comply with them at the time.  Indeed, the converse can be inferred from the allegations in the Complaint:

---

[16] "The FCA is a fraud prevention statute"—not a "technical compliance" statute.  *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999).  A regulatory violation is "not fraud unless the violator *knowingly* lies to the government about [it]."  *Id.* (emphasis added).

That Mr. Frohwein subjectively believed Kabbage was in compliance with PPP lending requirements. When "guidance allow[s] for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007); *see U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 288 (D.C. Cir. 2015) ("[E]stablishing even the loosest standard of knowledge, i.e., acting in reckless disregard of the truth or falsity of the information[,] is difficult when falsity turns on a disputed interpretive question.") (internal quotations omitted); *U.S. ex rel. Krawitt v. Infosys Techs. Ltd.*, 372 F. Supp. 3d 1078, 1089-90 (N.D. Cal. 2019) (dismissing complaint where the vagueness of applicable regulations precluded a finding of scienter).

The Complaint seems to rely on two allegations to argue Mr. Frohwein knew Kabbage was not in compliance with these PPP lending requirements:  (1) that he was on certain communications about PPP borrower fraud, and (2) that he received a consultant report on Kabbage's BSA/AML program.  As to the former, the Complaint's references to discussions in which Mr. Frohwein participated concerning borrower fraud do not show that he knew Kabbage was failing to comply with PPP lender requirements. *See, e.g.*, Compl. ¶¶ 279-80.  Rather, they reflect that Mr. Frohwein knew what the SBA knew:  There would be some level of borrower fraud in the PPP.  *See* Joint Motion at Background § D.

The Government cannot establish scienter when it knowingly accepted a risk of fraud in the program, urged lenders to relax their underwriting guidelines and rely on borrower attestations, and publicly proclaimed that it would pursue fraudulent borrowers on the backend.  *See Southland Mgmt. Corp.*, 326 F.3d at 681-82 (Jones, J., concurring) ("[A] presenter cannot be said to have *knowingly* presented a fraudulent or false claim" where "the government knows and approves of

the particulars of [the] claim for payment before that claim is presented" (quoting *U.S. ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 545 (7th Cir. 1999)) (emphasis added); *see also U.S. ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 328 (9th Cir. 1995) ("Even if the discrepancy constituted a false statement, the [government] knew of the discrepancy, and so [defendant] did not 'knowingly' submit a false claim.").

Beyond the Complaint's mere references to communications discussing borrower fraud in the PPP, the Government's only other allegation concerns Mr. Frohwein's reaction to a June 2020 A&M report that analyzed the Company's PPP compliance.  Compl. ¶¶ 254, 256.  However, the A&M report found that Kabbage was actually *in compliance* with PPP lender requirements, concluding:

> Overall, A&M observed a PPP compliance program that generally appears to be consistent with the SBA's PPP Interim Final Rules guidance and applicable BSA/AML and OFAC requirements and our understanding of regulatory expectations.  We also observed that Kabbage is currently in the midst of enhancing controls and making key operational changes to comply with evolving SBA PPP guidance changes.

Ex. 5 at 3.  Because A&M's report found that Kabbage was *adhering to* the PPP's requirements, it cannot form the basis of Mr. Frohwein's knowledge that Kabbage was violating them and thereby submitting false claims to the SBA.  Compl. ¶ 256.

## IV.     THE COMPLAINT FAILS TO ALLEGE THAT MR. FROHWEIN WAS UNJUSTLY ENRICHED OR PAID BY MISTAKE

Equally flawed are the Government's claims that Mr. Frohwein was unjustly enriched or paid based on a mistake of fact, both of which must be pled with particularity under Rule 9(b). *See* Compl. ¶¶ 354-364; *see also METX, LLC v. Wal-Mart Stores Tex., LLC*, 62 F. Supp. 3d 569, 586 (E.D. Tex. 2014) (applying Rule 9(b)'s heightened pleading standard to unjust enrichment claim); Fed. R. Civ. P. 9(b) (allegations of "fraud or *mistake*" must be pled with particularity) (emphasis added).  The Government makes no non-conclusory allegations to support either of

24

these counts and instead simply "re-alleges and incorporates by reference all [other] paragraphs [in the] [C]omplaint."  Compl. ¶¶ 355, 361.  Unjust enrichment and payment by mistake claims fail if premised on the same fraud as the government's insufficiently pled FCA claims.  *See U.S. v. Peters*, No. 2:24-cv-00287, 2024 WL 3378034, at *6 (E.D. Cal. July 11, 2024).  Because the Government has not alleged the fraud underlying its FCA claims with the requisite particularity, its unjust enrichment and payment by mistake claims—which are based on the same purported misconduct—also fail.

Moreover, to state the obvious, the SBA paid Kabbage—not Mr. Frohwein—for services Kabbage provided under the PPP.  The Complaint does not allege that Mr. Frohwein received any direct benefit from fees the SBA paid Kabbage.  Rather, the Complaint merely alleges that: Kabbage paid him a salary and bonus payments for his role as CEO (Compl. ¶ 79); he received a pay-out for the sale of Kabbage to American Express (*id.* ¶ 80); and American Express paid him a retention bonus following that acquisition (*id.* ¶ 81).  Courts frequently dismiss unjust enrichment and payment by mistake claims where, as here, there is no direct link between the plaintiff's missing funds and the benefit conferred on the defendant.  *See, e.g.*, *U.S. ex rel. Silva v. VICI Mktg., LLC*, 361 F. Supp. 3d 1245, 1257-58 (M.D. Fla. 2019) (dismissing unjust enrichment and payment by mistake claims where defendant did not directly benefit); *Gearhart v. Express Scripts, Inc.*, 422 F. Supp. 3d 1217, 1226-27 (E.D. Ky. 2019) (rejecting unjust enrichment claim where "at least two steps" separated any benefit from plaintiff to defendant).  The Court should therefore dismiss these additional counts, as Mr. Frohwein was not paid by mistake or unjustly enriched.

## CONCLUSION

For the reasons stated herein, Mr. Frohwein respectfully requests that the Court dismiss all of the Government's claims with prejudice under Rule 12(b).

Dated: March 11, 2025

Respectfully submitted,

By:     _/s/ Alexander J. Chern_
    Miranda Hooker (*pro hac vice*)
    Kate E. MacLeman (*pro hac vice*)
    Kara N. Czekai (*pro hac vice*)
    **GOODWIN PROCTER LLP**
    100 Northern Avenue
    Boston, Massachusetts 02210
    Telephone: (617) 570-1000
    Fax: (617) 523-1231
    MHooker@goodwinlaw.com
    KMacLeman@goodwinlaw.com
    KCzekai@goodwinlaw.com

    Nicholas M. Mathews
    Alexander J. Chern
    **MCKOOL SMITH, PC**
    300 Crescent Court, Suite 1500
    Dallas, TX 75201
    Telephone: (214) 978-4258
    Fax: (214) 978-4044
    NMathews@mckoolsmith.com
    AChern@mckoolsmith.com

    **ATTORNEYS FOR DEFENDANT
    ROBERT FROHWEIN**

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of filing to all attorneys of record.

/s/ Alexander J. Chern
Alexander J. Chern