## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* PAUL PIETSCHNER,<br><br>      Plaintiff,<br><br>      v.<br><br>KATHRYN PETRALIA;<br>ROBERT FROHWEIN; and<br>SPENCER ROBINSON,<br><br>      Defendants. | CIVIL NO. 4:21-CV-110-SDJ |

### STIPULATION AND ORDER ON THE PRODUCTION
### OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Rule 26(f) of the Federal Rules of Civil Procedure states that the parties must develop a proposed discovery plan that states the parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced."  Fed. R. Civ. P. 26(f)(3)(C).

The following Stipulation and Order on the Production of Documents and Electronically Stored Information ("Order") shall apply to and govern discovery in the above-captioned action (the "Action") and documents and electronically stored information ("ESI") produced by or obtained from any party or non-party in the course of the Action.

### I.      GENERAL PROVISIONS

1.      Except as specifically set forth herein, this Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the Eastern District of Texas.

1

2.    This Order shall not enlarge or affect the proper scope of discovery in this Litigation, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation.

3.    Absent special circumstances, and subject to the parties' written responses and objections, the production specifications set forth in this Order shall govern the production of all documents, including but not limited to hard copy documents, transcripts, exhibits, video and audio files, ESI, and any other materials and information (including, to avoid any ambiguity, any copies, summaries, or derivations thereof) produced by the parties in the first instance during discovery in the Action.

4.    The parties will meet and confer concerning the applicability of this Stipulation and Order to any Documents to be reproduced in this action that were previously produced in another action or as part of a pre-complaint investigation.  Generally, where the United States has obtained ESI or other information from a non-party to this litigation before the United States filed its Complaint in Intervention, the United States will produce that material as it was received.

5.    The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1).  The parties further agree to preserve ESI in such a way that it can be produced in a reasonably usable form in accordance with Federal Rule of Civil Procedure 34(b)(2)(E)(ii).

6.    **Production Specifications.**  The U.S. Department of Justice's Specifications for Production of ESI and Digitized Images ("Production Specifications"), attached and incorporated herein by reference, describe the production formats and fields to be included in all documents produced by each party as a default.  In the case of ESI and Digitized Images obtained by the United States from a non-party to this litigation before the United States filed its Complaint in

Intervention, the United States will produce such ESI and Digitized Images in the format that they were received by the United States. Nothing in this paragraph shall require the United States to obtain or produce metadata or other information about such ESI and Digitized Images that is not presently in the United States' possession.

## II. SPECIFIC PROVISIONS

### 1. Search and Collection Methodology

a) **Meet and Confer.** No later than fourteen (14) days after the Producing Party has served objections and responses to the Requesting Party's requests for production, the Parties shall meet and confer regarding search methods intended to be used to identify responsive documents and ESI including the search terms, date limitations, and custodians intended to be applied to the documents searched, and the Producing Party shall disclose their proposed search methodology. To the extent there are production issues that are not addressed in the Stipulation, the Parties shall meet and confer with respect to these issues, as well. If the issue is not resolved within fourteen (14) calendar days after the meet and confer, either Party may thereafter immediately submit the dispute to the Court for resolution.

b) **TAR.** Without prior agreement of the Parties, Technology Assisted Review ("TAR") will not be applied before or after any application of search terms by any Party, unless TAR is used for review prioritization only. Should a Producing Party wish to use any method or methodology not specifically addressed by this Protocol to exclude documents from any collection, review or production, notice to the Receiving Party must be made prior to the use of any such method or methodology. Such notice must disclose their proposed method or methodology, and the Parties will meet and confer regarding such proposal in good faith. If the issue is not resolved within fourteen (14) calendar days after

the meet and confer, either Party may thereafter immediately submit the dispute to the Court for resolution.

      c)     **De-Duplication.**  A party is required to produce only a single copy of a responsive document.  A producing party electing to deduplicate shall deduplicate across Custodians and at the family-level only (i.e., if there are identical child documents that have different parents, they are not duplicative, and an attachment to a document is not a duplicate of the same document maintained as a standalone document).  Each party may de-duplicate responsive ESI (based on Source Hash, MD5 hash values, or other industry standard method) across Custodians.  For emails with families, the hash value is generated based on the parent/child document grouping.  To the extent that deduplication through hash values is not possible, the parties shall meet and confer to discuss any other proposed method of deduplication.  A producing party must make reasonable efforts to identify all agreed upon custodians who were in possession of any de-duplicated documents through an appropriate load file field named DupeCustodian.  All duplicative custodian file paths that would have been included in the filepath metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in a metadata field called "DupeCustodian File path."  Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in the Production Specifications.  In the event of rolling productions of documents or ESI, the producing party will, as needed, supplement the load files with updated All Custodian information, as well as BCC information to the extent such metadata exists.  Duplicate custodian information may be provided by a metadata

overlay and will be provided by a producing party on an ongoing basis.  In the case of ESI obtained by the United States from a non-party to this litigation before the United States filed its Complaint In Intervention, the United States may produce that ESI as it was received, without further deduplication.

2.      **Production of ESI**

a)      **TIFFs.**  When producing black and white paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi, 1 bit, single-page TIFF files, CCITT Group IV (2D Compression).  When producing in color, paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi single-page JPG.  Each TIFF image should be named as its corresponding Bates number.  Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape).  Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files. TIFF image files should be provided in a self-identified "Images" folder.

b)      **System Files.**  Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced.

c)      **Metadata Fields and Processing.**  Absent special circumstances, each of the metadata and coding fields set forth in the Production Specifications that can be reasonably extracted from a document shall be produced for that document, to the extent already in existence and reasonably accessible or available.  To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this Stipulation shall require any party to extract, capture, collect or produce such data.  Any metadata fields for redacted documents that would reveal privileged information shall be excluded.

d)      **Extracted Text Files.**  For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata.  The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt.  File names should not contain any special characters or embedded spaces.  The text of native files should be extracted directly from the native file.  However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.  Also, if extracted text is not available in the native file, the documents should be processed by an OCR tool prior to production to extract available text so that the record is searchable.

e)      **Database Load Files/Cross-Reference Files.**  Documents should be provided with an image load file that can be loaded into commercially acceptable production software (*i.e.*, .OPT and .DAT files for use in Recommind, Relativity, etc.) using standard Concordance delimiters.  The first line in each metadata .DAT file should be the header containing the agreed upon field names, and each subsequent line should contain the fielded data for each document.  The image and data load files (*i.e.,* .OPT and .DAT files) should be provided in a self-identified "Data" folder.

f)      **Native Files.**  The following files shall be produced in the native format that is referenced in their Native Link field, along with a full TIFF or TIFF placeholder image that is named by the beginning Bates Number of the file, associated document-level text files, as well as metadata load files in delimited text format containing the fields required by Paragraph 3(c): (1) Spreadsheet files (e.g. Excel), (2) presentation files (e.g. powerpoint), and (3) media files such as audio and video files.  If a document to be produced as a Native File is subject to redactions, the document will be redacted natively,

to the extent reasonably and technically possible.  Each document produced in response to such requests shall be produced with a "NativeLink" entry in the .DAT load file indicating the relative file path to each Native File on the production media, and all extracted text and applicable metadata fields set forth in the Production Specifications.  In the case of ESI obtained by the United States from a non-party to this litigation before the United States filed its Complaint In Intervention, the United States will produce Native Files to the extent and in the manner the United States received them, and shall have no obligation to obtain or produce Native Files that are not presently in the United States' possession.

g)      **Requests for Other Native Files.**  Other than as specifically set forth above, a producing party need not produce documents in native format.  If good cause exists for the receiving party to request production of certain documents in native format, the receiving party may request production in native format by providing: (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format.  The producing party shall not unreasonably deny such requests.

h)      **Structured Data.**  To the extent responding to a discovery request requires production of ESI contained in a database, or ESI that cannot be rendered or reviewed without the use of proprietary software (whether created by the Producing Party or not) the producing party may comply with the discovery request by querying the database and generating a report ("Database Report") in a reasonably usable and exportable electronic format (for example, in Excel or CSV format).  The parties agree to meet and confer in good faith about the fields that are available and reasonably accessible for inclusion in the Database Report.  To the extent available and reasonably accessible, the first line in the

7

Database Report will show the column headers for each field of data included in the Database Report.  If available, a data dictionary should accompany the production; if unavailable, a description of fields should accompany the production.  If no report option is available, or if the report options are not reasonably usable, the Producing Party shall make the information available for inspection and copying on the system where it is currently maintained, or otherwise provide direct access to the data.  Unless otherwise agreed, the parties have no obligation to provide a supplemental report for records and information post-dating the extraction of the Database Report except as may be necessary to calculate relief after a determination by the Court as to liability.  In the case of structured data obtained by the United States from a non-party to this litigation before the United States filed its Complaint in Intervention, nothing in this paragraph shall require the United States to obtain or produce information about the structure data that is not presently in the United States' possession.

i)      **Parent-Child Relationships.**  Parent-child relationships (the association between e-mails and attachments) will be preserved.  E-mail attachments will be consecutively produced with the parent e-mail record.  For example, if a party produces an e-mail with its attachments, such attachments should be produced behind the e-mail in the order in which they were attached.

j)      **Redactions for Relevance.**  No redactions for relevance may be made within produced ESI.  The Parties agree that redactions may be made to the extent any information is protected from disclosure under any Federal law or privilege.

3.      **Production of Hard Copy Documents**

a)      **TIFFs.**  To the extent that hard copy documents will be produced, documents should be produced in the form of single-page, Group IV TIFFs at 300 dpi.

8

Each TIFF image should be named as its corresponding Bates number.  Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files.  TIFF image files should be provided in a self-identified "Images" folder. Where reasonably possible, documents should be logically unitized.

b) **Scanning and Unitization.**  In scanning hard copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized) to the extent practicable.  In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately.  If any original hard copy document has any note or attachment affixed to it, the producing party shall scan and produce copies of the original hard-copy document along with all notes and attachments to it in the same manner as other documents.  If any such note or attachment obscures any information on the original hard copy document, the producing party shall also produce a copy of the original hard-copy document without the note or attachment affixed in order to make the underlying information visible.  The relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields (i.e., the "BegBates," "EndBates", "BegAttach", and "EndAttach" fields).  The Parties will make reasonable efforts to unitize the documents correctly.  Within 14 calendar days (or as otherwise agreed) after notice from a requesting party that a document appears to have been unitized incorrectly, the producing party shall either explain why the unitization is correct or produce a correctly unitized replacement.  In the case of scanned hard-copy

9

documents obtained by the United States from a non-party to this litigation before the United States filed its Complaint in Intervention, the United States may produce such documents in the format they were received by the United States.

c)     **OCR Text Files.**  Optical Character Recognition ("OCR") text files shall be provided as a single text file for each document, not one text file per page.  Each file should be named with the beginning Bates number that is assigned to its corresponding document, followed by .txt extension.  OCR text files should be provided in a self-identified "Text" directory.  To the extent a document is redacted, OCR text files for such a document shall not contain text for redacted portions.

d)     **Database Load Files/Cross-Reference Files.**  Documents should be provided with an image load file that can be loaded into commercially acceptable production software (*i.e.*, .OPT and .DAT files for use in Recommind, Relativity, etc.) using standard Concordance delimiters.  The first line in each metadata .DAT file should be the header containing the agreed upon field names, and each subsequent line should contain the fielded data for each document.  The image and data load files (*i.e.,* .OPT and .DAT files) should be provided in a self-identified "Data" folder.

e)     **Parent-Child Relationships.**  Parent-child relationships (the association between e-mails and attachments) will be preserved where such information is reasonably available.

f)     **Redactions for Relevance.**  No redactions for relevance may be made within a produced hard-copy document.  The Parties agree that redactions may be made to the extent any information is protected from disclosure under any Federal law.

g)    **Coding Fields.**    Absent special circumstances, documents should be produced with at least the following searchable information in accompanying delimited data files: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Confidentiality Designation ("Confidential," or "Null"), (6) Custodian; and (7) Source. Entity/departmental custodians should be identified with a description of the entity or department.  A producing party shall use a uniform description of a particular custodian across productions.

## 4.    Bates Numbering

a)    Each TIFF image should be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given document.

b)    If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

## 5.    Production Delivery

a)    Documents that have been identified as responsive by a Producing Party shall be produced on a rolling basis at reasonable intervals.

b)    Unless otherwise agreed, documents and ESI will be produced via secure FTP site or similar electronic transmission format.  If the data volume is such that electronic transmission of the production is impracticable the production will be delivered on an encrypted external hard drive to a location designated by the Requesting Party.  Production media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of

11

the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of the Matter, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

## III.    MODIFICATION

1.    This Order may be modified by agreement of the affected Parties or by the Court for good cause shown.  Nothing in this Order waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that the affected Parties must first meet and confer and use reasonable best efforts to negotiate an exception from or modification to this Order prior to seeking relief from the Court.

**So ORDERED and SIGNED this 30th day of April, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE