**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* PAUL PIETSCHNER,<br><br>Plaintiff,<br><br>v.<br><br>KATHRYN PETRALIA;<br>ROBERT FROHWEIN; and<br>SPENCER ROBINSON,<br><br>Defendants. | Civil Action No.: 4:21-cv-110-SDJ |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION TO DISMISS
THE UNITED STATES' COMPLAINT IN INTERVENTION**

### **Table of Contents**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 2

      A.     Venue and Personal Jurisdiction Are Both Improper ............................................ 2

            1.   Venue Is Evaluated Based On The Government's Complaint In Intervention. 2

            2.   Venue Is Not Proper Based On The Allegations In The Government's Complaint, And Personal Jurisdiction Therefore Is Lacking As Well ............ 4

            3.   The Case Should Be Dismissed, Not Transferred ............................................ 7

      B.     The Complaint Fails To Allege Falsity ................................................................... 7

      C.     The Complaint Fails To Allege Materiality ............................................................ 9

            1.   The Opposition Fails to Remedy The Complaint's Failure to Plead Materiality With Respect to Kabbage's Certifications ......................................................... 9

            2.   The Opposition Misconstrues the Allegations With Respect to the $100K and SALT Errors ................................................................................................ 11

      D.     The Complaint Fails To Allege A Conspiracy To Violate The FCA ................... 12

      E.     The Complaint's Allegations Based On Defendants' Invocations Of Their Fifth Amendment Rights Must Be Ignored ................................................................. 13

      F.     The Court Should Deny Leave to Amend ............................................................ 14

III.    CONCLUSION ................................................................................................. 15

## <u>Table of Authorities</u>

**Page(s)**

**Federal Cases**

*United States ex. rel. Dones v. Harlingen Med. Ctr.*,
    701 F. Supp. 3d 636 (S.D. Tex. 2023) ...................................................................................15

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    490 F. Supp. 2d 784 (S.D. Tex. 2007) ...................................................................................14

*Galderma Laboratories, L.P. v. Teva Pharmaceuticals USA, Inc.*,
    290 F. Supp. 3d 599 (N.D. Tex. Nov. 17, 2017)......................................................................6

*H & B Equip. Co. v. Int'l Harvester Co.*,
    577 F.2d 239 (5th Cir. 1978) ................................................................................................13

*Hagood v. Sonoma Cty. Water Agency*,
    81 F.3d 1465 (9th Cir. 1996) ..................................................................................................7

*Happy Mfg. Co., Inc. v. S. Air & Hydraulics, Inc.*,
    572 F. Supp. 891 (N.D. Tex. 1982) ........................................................................................7

*King v. Dogan*,
    31 F.3d 344 (5th Cir. 1994) ....................................................................................................4

*United States ex rel. Lamers v. City of Green Bay*,
    168 F.3d 1013 (7th Cir. 1999) ................................................................................................8

*Laukus v. United States*,
    691 F. Supp. 2d 119 (D.D.C. 2010) .......................................................................................7

*Marshall v. Carter*,
    No. 4:20-CV-993-SDJ, 2021 WL 4316620 (E.D. Tex. Sept. 23, 2021)................................14

*Myers v. Am. Dental Ass'n*,
    695 F.2d 716 (3d Cir. 1982)....................................................................................................6

*Phillips v. Walker*,
    No. 07-C-2394, 2009 WL 5166227 (N.D. Ill. Dec. 22, 2009)..................................................3

*United States ex rel. Polukoff v. St. Mark's Hosp.*,
    No. 3:12-cv-01277, 2016 WL 1449219 (M.D. Tenn. Apr. 13, 2016) .......................................3

*United States ex rel. Porter v. Magnolia Health Plan, Inc.*,
    810 F. App'x 237 (5th Cir. 2020) .........................................................................................10

*Ramzan v. GDS Holdings Ltd.*,
   No. 4:18-CV-539-ALM-KPJ, 2019 WL 4748001 (E.D. Tex. Sept. 30, 2019).........................6

*United States v. Romans*,
   823 F.3d 299 (5th Cir. 2016) ....................................................................................................5

*United States ex rel. Salomon v. Wolff*,
   268 F. Supp. 3d 770 (D. Md. July 24, 2017) ..........................................................................3

*Sampson Indus., Inc. v. Amega Indus., Inc.*,
   No. 3-98-CV-1440-P, 1998 WL 826907 (N.D. Tex. Nov. 18, 1998)......................................6

*Seville v. Maersk Line, Ltd.*,
   53 F.4th 890 (5th Cir. 2022) ....................................................................................................7

*Tobien v. Nationwide General Insurance Co.*,
   133 F.4th 613 (6th Cir. 2025) ..................................................................................................6

*United Sates v. Planned Parenthood Gulf Coast. Inc.*,
   21 F. Supp. 3d 825 (S.D. Tex. 2014) ......................................................................................8

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   579 U.S. 176 (2016)............................................................................................................9, 11

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
   336 F.3d 375 (5th Cir. 2003) ................................................................................................14

**Federal Statutes**

28 U.S.C. § 1391..........................................................................................................................5

28 U.S.C. § 1406(a) ....................................................................................................................7

31 U.S.C. § 3731(c) .................................................................................................................3-4

31 U.S.C. § 3732(a) ...........................................................................................................2, 5, 6

31 U.S.C. § 3733........................................................................................................................12

**Other Authorities**

14D Wright & Miller, Fed. Prac. & Proc. § 3826........................................................................6

Fed. R. Civ. P. 15......................................................................................................................14

Fed. R. Evid. 201 ......................................................................................................................10

Merriam-Webster, *available at* https://www.merriam-
   webster.com/dictionary/proceed .........................................................................................3-4

**Table of Abbreviations**

| Abbreviation | Definition | ECF No. |
|---|---|---|
| AmEx | American Express | |
| Form 2483 | SBA Form 2483 (Sept. 30, 2020), https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Application-3-30-2020-v3.pdf | |
| Form 3507 | CARES Act Section 1102 Lender Agreement – Non-Bank and Non-Insured Depository Institution Lenders (Sept. 30, 2021), https://www.sba.gov/sites/default/files/2021-04/SBA-Form-3507-PPP--Agreement-for-New-Lenders-Non-Bank-Non-Insured-Depository-Institution-Lenders%20%28revised%204-9-21%29-508.pdf | |
| Complaint | The Complaint-in-Intervention filed by the United States on December 20, 2024 | 40 |
| Defendants | Kathryn Petralia, Robert Frohwein, Spencer Robinson | |
| DOJ | Department of Justice | |
| EDTX | Eastern District of Texas | |
| Frohwein Motion | Defendant Frohwein's Motion to Dismiss the United States' Complaint-in-Intervention | 68 |
| GAO | U.S. Government Accountability Office | |
| Government | The United States | |
| Joint Motion | Defendants' Joint Motion to Dismiss the United States' Complaint-in-Intervention | 66 |
| Kabbage | Kabbage, Inc. | |
| NDGA | Northern District of Georgia | |
| OIG | Office of Inspector General | |
| Opposition | The Government's Omnibus Opposition | 72 |
| Petralia Motion | Defendant Petralia's Motion to Dismiss the United States' Complaint-in-Intervention | 65 |

| Abbreviation | Definition | ECF No. |
|---|---|---|
| PPP | Paycheck Protection Program | |
| PPP FAQs | Paycheck Protection Program Loans Frequently Asked Questions (Apr. 6, 2020), https://www.sba.gov/sites/default/files/2023-03/Final%20PPP%20FAQs.pdf | |
| *Qui Tam* Complaint | The *Qui Tam* Complaint filed by Relator Paul Pietschner on February 5, 2021 | 1 |
| Relator | Relator Paul Pietschner | |
| Robinson Motion | Defendant Robinson's Motion to Dismiss the United States' Complaint-in-Intervention | 67 |
| SBA | Small Business Administration | |
| SBA OIG Report No. 22-13 | SBA Inspector General, *SBA's Handling of Potentially Fraudulent Paycheck Protection Program Loans*, Report No. 22-13 (May 26, 2022), https://www.sba.gov/document/report-22-13-sbas-handling-potentially-fraudulent-paycheck-protection-program-loans | |

## I.    INTRODUCTION

The government's Opposition underscores the infirmities of its case, which improperly seeks to shift the blame for the flawed implementation of the PPP from the SBA to the private-sector lenders it enlisted as partners.  Not satisfied with blaming Kabbage, the Complaint and Opposition now seek to blame individual Kabbage executives.  But that effort fails many times over.

First, unlike Kabbage, none of the individual defendants are subject to venue or jurisdiction in this district, which is a defect requiring dismissal, not merely transfer to the NDGA, as the government contends.  Second, the Complaint fails to allege any "false" claims—the *sine qua non* of FCA liability—and the Opposition ignores relevant case law establishing that mere errors are not actionable under the FCA, as well as dispositive language in the relevant SBA forms and guidance.  Third, the government has not satisfied the FCA's "demanding" materiality requirement.  The government has not pled facts supporting a plausible inference that the alleged loan application errors and lender shortcomings were material to the government's payment of PPP loans, and it cannot meet this high bar given the SBA's acknowledgment that the PPP's relaxed underwriting criteria and reliance on borrower certifications would inherently allow some unspecified number of fraudulent applications to be approved.  Fourth, the government's conspiracy allegations fail twice over as the government does not allege any agreement among the three defendants sufficient to satisfy the pleading requirements of either Rule 8 or Rule 9(b), and its conspiracy claim would in any event be barred by the intra-corporate conspiracy doctrine. Finally, the government all but abandons its extensive reliance on the Defendants' invocation of their Fifth Amendment rights during the government's pre-filing investigation, such that the accompanying allegations—which permeate the Complaint—must be ignored.  For all of these reasons, the Complaint should be dismissed with prejudice.

Consistent with the Court's Order Permitting Consolidated Briefing and Extending Page Limits and Deadlines, *see* ECF No. 64, this Reply sets forth Defendants' joint arguments in response to the government's Opposition that pertain to all Defendants.[1]  Defendants will separately file reply briefs regarding arguments that are Defendant-specific.

## II.    ARGUMENT

### A.    Venue and Personal Jurisdiction Are Both Improper

#### 1.    Venue Is Evaluated Based On The Government's Complaint In Intervention

The Court should reject the government's novel theory that venue over the Complaint-in-Intervention it filed in December 2024 relates back to the separate *Qui Tam* Complaint filed by the relator in February 2021.  Opp. 15.  The FCA's venue provision dictates where "[a]ny action under section 3730 may be brought."  31 U.S.C. § 3732(a).  The government brought an action that names only Ms. Petralia, Mr. Frohwein, and Mr. Robinson as defendants.[2]  Compl. ¶¶ 1, 10-12. Thus, whether the government "may . . . br[ing]" this action in the EDTX under § 3732(a) turns on whether venue is proper as to the named defendants—not as to a defendant in the relator's Complaint that was dismissed well before the government filed its Complaint and served the Defendants.  *See* ECF Nos. 30-31, 40.

---

[1] The government's Omnibus Opposition to Defendants' Motion to Dismiss violates the Court's Order to consolidate briefing and extend page limits and deadlines.  *See generally* ECF No. 64. The Court ordered that the government "may file a response to [the Joint Motion]" and "a *separate* response to each individual Defendant's motion to dismiss."  *Id.* at 1.  Defendants have attempted to parse through the Omnibus Opposition, which does not differentiate amongst the Defendants, and reply consistent with the Court's Order.

[2] While the government accuses Defendants of "ignor[ing] that Kabbage was a named defendant in this action when it was filed," *e.g.*, Opp. 15, the Complaint never itself invokes Kabbage's contacts as a basis for venue, Compl. ¶ 7.  Instead, the Complaint alleges only that venue is proper in EDTX "because Defendants transacted business in this district."  *Id.*  They do not and they did not.

The cases cited by the government for its "well-settled" legal theory that venue relates back to the relator's Complaint, *see* Opp. 13, are inapposite, as they all arose outside the distinct context of the FCA.  The only case of which Defendants are aware that addresses the government's self-proclaimed "well-settled" argument regarding whether venue *in an FCA action* should be evaluated based on the government's complaint-in-intervention or on the relator's original complaint deemed it an "interesting question of first impression" that the court did not need to decide.  *U.S. ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. July 24, 2017).  Moreover, in at least one case where the government chose not to intervene, the court concluded that venue was *not* proper after it dismissed the sole defendant that had provided a basis for venue in that district.  *See U.S. ex rel. Polukoff v. St. Mark's Hosp.*, 2016 WL 1449219, at *4 (M.D. Tenn. Apr. 13, 2016) (concluding that "venue is not proper in this District" where "[a]ll defendants other than [the dismissed defendant] reside elsewhere").  The same is true here.

Case law outside the FCA context strongly supports Defendants.  When a "plaintiff files an amended complaint adding additional parties or claims, venue rules must be satisfied for that complaint."  *Phillips v. Walker*, 2009 WL 5166227, at *1 (N.D. Ill. Dec. 22, 2009) (rejecting as "weak" the argument that the court could not reconsider venue following the filing of an amended complaint) (emphasis in original).  These principles apply *a fortiori* in the context of an FCA action.  Under 31 U.S.C. § 3731(c), the government is authorized to intervene and "file its own complaint."[3]  The government's Complaint here—which both drops a defendant and adds new

---

[3] Section 3731(c) allows the government to "file its own complaint or amend the complaint of a person who has brought an action under 3730(b)."  As a result, when the government "proceeds with" an "action brought by a person under [§ 3730(b)]," that language must cover commencing an independent action.  Opp. 14 (citing 31 U.S.C. § 3730(d)(1)); *see also* "Proceed," Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/proceed (defining "proceed"

claims—is far closer to a standalone action than to an amended complaint.  While the government cites § 3731(c) for the proposition that the government's Complaint "is deemed to relate back to the filing date of the Relator's original complaint," Opp. 13 n.9, that statutory provision provides that, "[f]or *statute of limitations purposes*, any such Government pleading shall relate back to the filing date of the complaint of the person who originally brought the action."  31 U.S.C. § 3731(c) (emphasis added).  If anything, applying the *expressio unius* canon of statutory interpretation, this provision reinforces that the government's Complaint should *not* be understood as an extension of the relator's Complaint except for statute of limitations purposes.

### 2.    Venue Is Not Proper Based On The Allegations In The Government's Complaint, And Personal Jurisdiction Therefore Is Lacking As Well

The government cannot show that venue is proper.  The only basis the government alleges for venue is that Defendants transacted business in EDTX.  Compl. ¶ 7.  They did not.  *See* Frohwein Mot. 4; Petralia Mot. 9-10; Robinson Mot. 6-7.  Defendants do not transact business in EDTX now, and as the Complaint acknowledges, they did not transact business in EDTX when the Complaint was filed and served in December 2024 or even when the *Qui Tam* Complaint was filed in February 2021.  *See* Compl. ¶¶ 10-12 (Defendants left Kabbage in October 2020); *see also id*. ¶ 81 (KServicing, a "new entity," serviced Kabbage's former loans after the AmEx transaction in October 2020).  Thus, the government cannot establish venue based on either complaint.

Contrary to the government's assertion, venue is also not established on the basis that "act[s] proscribed by section 3729 occurred" in EDTX.  Opp. 16.  Indeed, none of the Defendants is alleged to have taken any act in EDTX.  Each lived in Georgia while working for a company

---

as "to begin and carry on an action, process, or movement") (last modified May 3, 2025). Regardless, it is likewise the case that a plaintiff filing an amended complaint "proceeds with" their prior action, but the amended pleading nevertheless "supersedes the original complaint," *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994), and must therefore satisfy the venue requirements.

located in Georgia.  *See* Compl. ¶ 57.   Kabbage participated in a program run by the federal government in Washington, D.C.  Even accepting the government's description of the facts in its Opposition, they in no way show that an "act proscribed by" the FCA occurred in EDTX.  The government maintains, for example, that "Kabbage originated PPP loans throughout the United States, including to PPP borrowers in the EDTX."  Opp. 16.  But, at most, that shows Defendants worked for an online company that had customers in EDTX.[4]  The government's approach would entirely overrun § 3732(a), leading to nationwide venue (and therefore nationwide personal jurisdiction) whenever an individual works for a company with customers nationwide.[5]

The government next suggests that venue is proper because EDTX was purportedly home to "overt acts in furtherance of the conspiracy under § 3729(a)(1)(C)."  Opp. 17.  This theory fails twice over.  First, this is a civil action.  "Except as otherwise provided by law," 28 U.S.C. § 1391(b) "govern[s] the venue of all civil actions brought in district courts of the United States."  And 31 U.S.C. § 3732(a) sets out a different avenue for bringing a case under the FCA.  28 U.S.C. § 1391(a)(1).  There is no basis for importing an inapplicable common law rule governing venue for a criminal prosecution.  *See, e.g.*, *U.S. v. Romans*, 823 F.3d 299, 310 (5th Cir. 2016) (evaluating venue for a conspiracy to possess with intent to distribute marijuana).  Second, even assuming the government could establish venue in an FCA action based on a single act in furtherance of the conspiracy, the government cannot mix and match the nationwide service of process provision in

---

[4] The government also argues that Defendants marketed Kabbage's services nationwide.  *See, e.g.*, *id.* ("[T]hese fraudulent loan transactions occurred because Kabbage, at the direction and under the control of Defendants, marketed Kabbage's fraudulent PPP services nationwide, including in EDTX.").  But the Complaint does not allege that Defendants marketed Kabbage's services in EDTX, and even if they did, marketing is not an act proscribed by the FCA.

[5] The government identifies two paragraphs of the Complaint (317 and 327) that it claims identify "fraudulent loans to borrowers in Plano, TX."  Opp. 16.  But paragraph 327 addresses loans to two "*purported businesses*" with the same Plano address.  Thus, the government's own allegations fail to establish that these were actual borrowers in EDTX.

§ 3732(a) with its venue-by-conspiracy theory. *See, e.g.*, *Ramzan v. GDS Holdings Ltd.*, 2019 WL 4748001, at *6 (E.D. Tex. Sept. 30, 2019) (explaining that "[p]laintiffs cannot apply the service of process provision of Section 27 [of the Exchange Act] unless they first establish that venue is proper under the venue provision"). Thus, establishing venue on the basis of a purported conspiracy would not support the exercise of personal jurisdiction over Defendants.

Finally, the government attempts to shift the burden to Defendants to show that they did *not* transact business in the EDTX. *See* Opp. 17. As the treatise the government cites recognizes, "the weight of judicial authority appears to be that when the defendant has made a proper objection, the burden is on the plaintiff to establish that the chosen district is a proper venue." 14D Wright & Miller, Fed. Prac. & Proc. § 3826. This approach is followed by a majority of federal courts in the Fifth Circuit, *see Galderma Laboratories, L.P. v. Teva Pharm. USA, Inc*., 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017), and a majority of the Circuits overall, *see Tobien v. Nationwide Gen. Ins. Co*., 133 F.4th 613, 619 (6th Cir. 2025). Just last month, the Sixth Circuit joined this Circuit majority and identified serious flaws in the reasoning of the 43-year-old Third Circuit case on which the government relies. *See Tobien*, 133 F.4th at 620 (discussing *Myers v. Am. Dental Ass'n*, 695 F.2d 716 (3d Cir. 1982)). Thus, while Mr. Frohwein provided a declaration to support his venue argument, Defendants were under no obligation to do so in order to support their arguments for improper venue. *See Sampson Indus., Inc. v. Amega Indus., Inc.*, 1998 WL 826907, at *1 (N.D. Tex. Nov. 18, 1998) (explaining that there is "no case law in support of [plaintiff's] contention that a motion to transfer venue must be supported by affidavit").

The government has conceded that the sole basis on which it asserts that the Court has personal jurisdiction over Defendants is through the FCA's nationwide service of process provision. Opp. 29. Because that provision requires that the Court have proper venue, which is

lacking here, dismissal is required for both improper venue and lack of personal jurisdiction.

### 3.    The Case Should Be Dismissed, Not Transferred

By default, cases where venue is improper should be dismissed.  They may be transferred only when "the interest of justice" so requires.  28 U.S.C. § 1406(a).  It is Plaintiff's burden to show that transfer is in the interests of justice, and the government has not met that burden.  *See Happy Mfg. Co., Inc. v. S. Air & Hydraulics, Inc.*, 572 F. Supp. 891, 894-95 (N.D. Tex. 1982).

First, where, as here, an action is brought in the wrong district, the interests of justice support dismissal (not transfer) when "there are obvious substantive problems with the plaintiff's claims." *Laukus v. U.S.*, 691 F. Supp. 2d 119, 127 (D.D.C. 2010) *aff'd*, 442 F. App'x (D.C. Cir. 2011).  The Complaint, although lengthy, has obvious substantive problems that demand dismissal, as further explained in Defendants' Joint and Individual Motions under Rules 9(b) and 12(b)(6).

Second, the interests of justice support dismissal when a plaintiff's attorney could have reasonably foreseen that venue was improper.  *Seville v. Maersk Line, Ltd*., 53 F.4th 890, 896 (5th Cir. 2022).  Improper venue here was clearly foreseeable given the lack of connection between Defendants and EDTX.  Accordingly, this case should be dismissed, not transferred.

### B.    The Complaint Fails To Allege Falsity

The government's arguments fail as to both its theories of falsity—i.e., that the Defendants made "factually false" claims in the form of loan applications containing "the SALT Error" and "the $100K Error," Opp. 48, and that they made "legally false" claims via their certifications on the accompanying PPP forms, Opp. 49.

As to the first, the government's own choice of words—"errors"—is telling.  Indeed, the word appears *more than 100 times* in the Complaint.  *See* Compl. *passim*.  Under the FCA, however, "[b]ad math is no fraud." *Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996) (citations omitted).  "[T]he statutory phrase 'known to be false' does not mean

incorrect as a matter of proper accounting methods, it means a lie." *Id.*  In other words, "errors based simply on faulty calculations or flawed reasoning are not false under the FCA." *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999).  And "[i]nnocently made faulty calculations . . . cannot give rise to liability." *U.S. v. Planned Parenthood Gulf Coast, Inc.*, 21 F. Supp. 3d 825, 832 (S.D. Tex. 2014) (quoting *U.S. v. Southland Mgmt. Corp.*, 326 F.3d 669, 682 (5th Cir. 2003) (en banc) (Jones, J., concurring)).

The government's theory of "legal falsity" fares no better, as it ignores the actual text of the certifications it cites and the accompanying SBA guidance.  As to Form 3507, the government argues that "Kabbage certified that it would maintain compliance with applicable PPP requirements."  Opp. 49.  That grossly overstates the certification, which states merely: "*To the best of its knowledge*, Lender certifies that it is in compliance and will maintain compliance with all applicable requirements of the" PPP.  *See* Form 3507 at 5 (emphasis added).  As to Form 2484, the government argues that "Kabbage and its Lender Partners falsely certified for each loan that they had complied with the lender obligations enumerated in paragraphs 3.b(i)-(iii) of the April 15, 2020, Interim Final Rule, when, in fact, they had not."  Opp. 49.  But the SBA's accompanying guidance stated that "[l]enders are expected to perform *a good faith review, in a reasonable time*, of the borrower's calculations and supporting documents concerning average monthly payroll cost" and "may rely on borrower representations, including with respect to amounts required to be excluded from payroll costs," which is precisely what Kabbage did.  *See* PPP FAQs at Answer to Question No. 1 (emphasis added).  Defendants quoted that critical language prominently in their Joint Motion, *see* Joint Mot. 16, yet the government offered no response.  The government's argument that Kabbage submitted false certifications it had "confirm[ed] receipt of information demonstrating that borrowers had employees . . . on or around February 15, 2020," Opp. 51, plainly

ignores that Kabbage was allowed to—and instructed by the SBA to—rely on borrower certifications.  *See* Form 2483 at 2 (requiring the applicant to certify, e.g., that "[it] was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes . . .").

The government cannot satisfy its pleading burden by ignoring relevant case law and key language in the relevant certifications and SBA guidance.  It has failed to plead the required element of falsity, and its FCA claims should be dismissed on that basis.

### C.    The Complaint Fails To Allege Materiality

The government asserts that the Complaint satisfies the FCA's materiality standard because it alleges that "Defendants, through their operational control of Kabbage, (1) fraudulently inflated the loan amounts of PPP loans . . . , and (2) failed to review PPP loans as required by SBA requirements[.]"  Opp. 74.  But the next eight pages of argument say virtually nothing about the second category of allegations—i.e., those related to Kabbage's loan reviews and the adequacy of its fraud controls—focusing instead on the materiality of the SALT and $100K errors.  *See id.* 74-82.  What little is said does not withstand scrutiny.

### 1.    The Opposition Fails to Remedy The Complaint's Failure to Plead Materiality With Respect to Kabbage's Certifications

First, the government argues that the "false certifications" submitted by Kabbage were a "condition of payment of PPP processing fees and of PPP loan forgiveness and guaranty purchase payments by the SBA."  *Id.* 76.  But the Supreme Court has squarely rejected the argument that "any statutory, regulatory, or contractual violation is material so long as the defendant knows that the [g]overnment would be entitled to refuse payment were it aware of the violation."  *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 195 (2016).

Second, the government argues that Kabbage's "fail[ure] to review loan applications such that obviously ineligible borrowers were approved by Kabbage" was material to the SBA's

decision to pay PPP funds.  Opp. 75.  But the government admits that its allegations regarding the adequacy of Kabbage's PPP loan review processes differ from its allegations regarding Kabbage's loan calculation errors.  Indeed, whereas the Complaint alleges that the SBA stopped processing loans for forgiveness when it was informed of the SALT and $100K errors, it concedes that "the Government has not made a similar allegation related to Kabbage's failure to review PPP loan applications in accordance with lender requirements[.]"  *Id.* at 78-79.  That is grounds for dismissal.  *See, e.g.*, *U.S. ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 241-42 (5th Cir. 2020) (affirming dismissal of FCA complaint on materiality grounds where the government "took no action" after learning of allegations of fraud and instead continued to pay the defendant).

Third, the government attempts to distract from the fact that the SBA acknowledged from the outset that, in relaxing underwriting criteria and directing lenders to rely on borrower certifications, there was an inherent "risk [that] fraudulent and ineligible applicants [would] receiv[e] PPP loans and loan forgiveness."  SBA OIG Report No. 22-13 at 3.[6]  As discussed in Defendants' Joint Motion, at most, the Complaint alleges that Defendants were on notice that Kabbage's loan review processes were failing to catch some unspecified percentage of fraudulent PPP applications.  Joint Mot. 16-18.  But the failure to detect 100% of fraudulent PPP applications could not have been material to the SBA's payment decision when it acknowledged that, even with

---

[6]  The government attempts to brush aside the numerous authoritative reports (from congressional committees, the GAO, and the SBA's own OIG) on the ground they "post-date the relevant time period," Opp. 59, but their publication dates are irrelevant.  What is important here is that multiple government entities conducting a thorough and comprehensive review have recognized the SBA's deliberate emphasis on speed over accuracy in the PPP.  Moreover, because the government provides no reason to question the accuracy and reliability of such findings, the Court should consider them here.  *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also* Joint Mot. 4 n.2.

perfect adherence to PPP lender requirements, some unspecified percentage of fraudulent PPP applications would inevitably slip through the cracks.  The government mischaracterizes this argument as an attempt to "blame the victim"—a "government knowledge" defense that accuses the SBA of approving specific applications it knew were fraudulent.  Opp. 58-59.  But Defendants are not arguing that anyone—*Defendants or SBA*—knowingly approved (or submitted for approval) PPP applications that they specifically knew at the time were fraudulent.  Rather, Defendants argue that the SBA (and Defendants) understood that strict compliance with the PPP's relaxed lender requirements would necessarily allow some unspecified number of fraudulent applications to be approved, but that was the risk the government accepted in designing a program that was primarily focused on getting funds into the hands of borrowers as quickly as possible.  Thus, the government fails to meet the FCA's "demanding" materiality standard.  *See Escobar*, 579 U.S. at 194.

### 2.    The Opposition Misconstrues the Allegations With Respect to the $100K and SALT Errors

The Opposition tries to treat the $100K and SALT errors as identical "calculation errors."  *See, e.g.*, Opp. 74-75 (referring repeatedly to "loan calculation errors").  But they are not the same, and the government has failed to plead materiality with particularity as to each error for different reasons.  *See also* Mr. Robinson's Individual Reply, filed concurrently herewith.

For the $100K error, Kabbage relied on borrower certifications that the borrowers did not have employees earning more than $100K.  To the extent a calculation comparing the number of employees to the requested loan amount would have indicated $100K errors, such a comparison was not required under the SBA's rules or guidance, and could not have been material, because SBA received the same figures (i.e., payroll and headcount) *and could have done the simple arithmetic itself*.

For the SALT error, the government does not argue that the Complaint sufficiently pled that any individual Kabbage borrower was not entitled to the loan amount claimed (because the borrower's health insurance and retirement costs likely exceeded state and local tax withholdings). Instead, the government argues that proving *whether* the borrower was entitled to the requested loan amount is an affirmative defense, and Defendants have the burden of proof. *See* Opp. 69-70. Not so. The PPP application form did not require Kabbage to certify the accuracy of the loan amount, or to itemize each component of the borrower's claimed monthly payroll expenses. Supposed noncompliance with a requirement that did not exist cannot be material.

### D.    The Complaint Fails To Allege A Conspiracy To Violate The FCA

The government cannot overcome the fundamental defect in its conspiracy claim: the glaring failure to plead an agreement among the three Defendants. At best, the Complaint alleges: "Beginning in or around March 1, 2020, and continuing until the AmEx transaction, completed on October 16, 2020, Defendants Frohwein, Petralia, and Robinson knowingly entered into an unlawful agreement among themselves, and others, to present and cause the presentment of false or fraudulent claims[.]" Compl. ¶ 346. The insufficiencies here are obvious. When, exactly, did the three Defendants "enter" this agreement? Despite months of pre-filing investigation under 31 U.S.C. § 3733, the government cannot say. Nor can it distinguish the existence of conspiracy from independent parallel actions—the very defect that resulted in the dismissal of the complaint in *Bell Atlantic Corp. v. Twombly*, where the Supreme Court held that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." 550 U.S. 544, 556-57 (2007). As that is all the government alleges here, its claim fails under Rule 8. It fails *a fortiori* under Rule 9(b), given the heightened

pleading requirements that apply to FCA claims.

Moreover, these defects cannot be cured by amendment in light of the prevailing view among the federal courts in Texas regarding the intra-corporate conspiracy doctrine, which the government acknowledges but urges this Court not to follow. Opp. 96 n.28. The government's efforts to evade the doctrine are unpersuasive. First, it argues the doctrine does not apply because the Fifth Circuit has expressly declined to apply the doctrine in criminal conspiracy cases, *id.* 31, 96; but this is a *civil* case, so that distinction is irrelevant. So too is the government's alternative theory that an exception exists when corporate employees have "an independent stake" in achieving the object of the conspiracy. *Id.* 97. The government alleges no "independent" stakes here—indeed, any compensation or equity interests held by the defendants was entirely dependent on the success or failure of Kabbage. This is insufficient even under the government's own Fifth Circuit authority. *H & B Equip. Co. v. Int'l Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978) (no exception applied because the benefit the employee stood to receive "would flow entirely from [his employer], and is indistinguishable from other forms of compensation, such as salary.").

### E.    The Complaint's Allegations Based On Defendants' Invocations Of Their Fifth Amendment Rights Must Be Ignored

The government all but abandons its 46 allegations in the Complaint regarding the Defendants' invocation of the Fifth Amendment, stating that it is "not at this time asking this Court to rule that any of the Defendants' Fifth Amendment invocations warrants an adverse inference." Opp. 103. In the next breath, however, it asserts that "the *fact* that [Defendants] invoked their Fifth Amendment privilege during the Government's investigation is [not] irrelevant at this pleading stage" and that "[n]othing prevents this Court from considering this potential [adverse] inference to evaluate the sufficiency" of the Complaint. *Id.* at 104. The government cites no authority for that proposition, which contradicts the government's own concession that the

determination of whether an adverse inference attaches to the invocation of the privilege "requires an evidentiary ruling." *Id.* at 103. As explained in the Joint Motion, allegations of "silence" are not allegations of facts, *see* Joint Mot. 22, and the "invocation of the Fifth Amendment does not excuse [the government] from pleading with specificity." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 490 F. Supp. 2d 784, 825 (S.D. Tex. 2007). All allegations based on the Defendants' invocation of their Fifth Amendment right in the Complaint must be ignored.

### F.    The Court Should Deny Leave to Amend

In its Opposition, the government makes a short, boilerplate request for the opportunity to replead its claims in the event the Court finds they are deficient. *See* Opp. 105. To start, such "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought . . . —does not constitute a motion within the contemplation of Rule 15(a)." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (citation omitted). Moreover, although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), it is not required here, where the government's request is both untimely and futile. *See Marshall v. Carter*, 2021 WL 4316620, at *2 (E.D. Tex. Sept. 23, 2021) (citations omitted) ("Denial of leave to amend may be warranted for undue delay . . . or futility of a proposed amendment," among other reasons).

The government filed its Complaint after it had nearly *four years* after the *Qui Tam* Complaint was filed to investigate the relator's claims using the broad array of discovery tools

available to it and the full cooperation of Kabbage's successor entity (KServicing).[7]  Despite the substantial evidence available to the government, the Complaint fails to meet the requirements of Rules 8(a) and 9(b), as set forth in greater detail in Defendants' Joint and Individual Motions, and the Opposition does not even attempt to explain how an amendment could cure such deficiencies. The Court should therefore reject the government's improper request for a second bite at the apple to replead its baseless allegations, as doing so would both be futile and reward the government for its undue delay.  *See, e.g.*, *U.S. ex. rel. Dones v. Harlingen Med. Ctr.*, 701 F. Supp. 3d 636, 656 (S.D. Tex. 2023) (denying relator's request for leave to amend because "[h]is factual allegations would remain identical . . . and [they] d[id] not present a claim upon which relief can be granted.").

## III.    CONCLUSION

The Court should dismiss the government's FCA claims with prejudice in their entirety.

---

[7] *See* Settlement Agreement between the DOJ, KServicing, and relator David Berteletti in connection with Case No. 1:20-cv-12114 (D. Mass 2020), ⁋ 13 (dated May 7, 2024), available at https://www.justice.gov/usao-ma/media/1351716/dl ("[KServicing] agree[s] to cooperate fully and truthfully with the [government's] investigation of individuals and entities not released in this Agreement. . . ."); Settlement Agreement between the DOJ, KServicing, and relator Paul Peitschner in connection with Case No. 4:21-cv-00110 (E.D. Tex. 2020), ⁋ 14 (dated May 7, 2024), available at https://www.justice.gov/usao-ma/media/1351711/dl (same).

Dated: May 9, 2025

Respectfully submitted,

*/s/ Melissa R. Smith*
Melissa R. Smith
Gillam & Smith LLP
303 South Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

Anjan Sahni (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center, 250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
anjan.sahni@wilmerhale.com

Christopher E. Babbitt (*pro hac vice*)
Michaela S. Wilkes Klein (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Fax: (202) 663-6363
christopher.babbitt@wilmerhale.com
michaela.wilkesklein@wilmerhale.com

George P. Varghese (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000
george.varghese@wilmerhale.com
**Counsel for Kathryn Petralia**

*/s/ Nicholas M. Mathews*
Nicholas M. Mathews
Alexander J. Chern
McKool Smith, PC - Dallas
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4258
Fax: (214) 978-4044
Nmathews@mckoolsmith.com
Achern@mckoolsmith.com

Miranda Hooker (*pro hac vice*)
Kate E. MacLeman (*pro hac vice*)
Kara N. Czekai (*pro hac vice*)
Goodwin Procter LLP
100 Northern Avenue
Boston, Massachusetts 02210
Telephone: (617) 570-1000
Fax: (617) 523-1231
MHooker@goodwinlaw.com
KMacLeman@goodwinlaw.com
KCzekai@goodwinlaw.com
**Counsel for Robert Frohwein**

*/s/ Henry W. Asbill*
Henry W. Asbill (*pro hac vice*)
Christopher B. Mead (*pro hac vice*)
Lisa H. Schertler (*pro hac vice*)
Paola Pinto (*pro hac vice*)
Schertler Onorato Mead & Sears
555 13th Street NW Suite 500W
Washington DC 20004
Telephone: 202-628-4199
Facsimile: 202-628-4177
hasbill@schertlerlaw.com
cmead@schertlerlaw.com
lschertler@schertlerlaw.com
ppinto@schertlerlaw.com
**Counsel for Spencer Robinson**

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2025, I caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Dated: May 9, 2025                                  Respectfully Submitted,

                                                    */s/ Melissa R. Smith*
                                                    Melissa R. Smith