# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* PAUL PIETSCHNER,<br><br>Plaintiff,<br><br>v.<br><br>KATHRYN PETRALIA; ROBERT FROHWEIN; and SPENCER ROBINSON,<br><br>Defendants. | Civil Action No.: 4:21-cv-110-SDJ |

**DEFENDANT KATHRYN PETRALIA'S
REPLY IN SUPPORT OF HER MOTION TO DISMISS
THE UNITED STATES' COMPLAINT IN INTERVENTION**

**Table Of Contents**

ARGUMENT ................................................................................................................................. 2

I.   The Complaint Fails To Allege That Ms. Petralia Acted With The Requisite Scienter ......... 2

II.  The Complaint Fails To Plead Causation As To Ms. Petralia ................................................ 6

III. The Complaint Fails to Plead Common Law Claims as to Ms. Petralia............................... 9

CONCLUSION ............................................................................................................................ 10

## **Table of Authorities**

Page(s)

**CASES**

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)..........................................5

*Drywall Elements, LLC v. Edward Wolff & Assocs., LLC*, 2022 WL 4667997
    (E.D. Tex. Sept. 30, 2022) ........................................................................................................2

*Fulcrum Credit Partners LLC v. Strategic Cap. Res., Inc.*, 2011 WL 13104241
    (W.D. Tex. Mar. 15, 2011) ........................................................................................................9

*Greene v. DeMoss*, 2022 WL 3716201 (5th Cir. Aug. 29, 2022).....................................................4

*Hidden Values, Inc. v. Wade*, 2012 WL 1836087 (N.D. Tex. May 18, 2012)................................2

*Silva v. VICI Marketing, LLC*, 361 F. Supp. 3d 1245 (M.D. Fla. 2019)..........................................9

*Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956 (E.D. Tex. 1997)..................................................10

*United States ex rel. Aldridge v. Corp. Mgmt., Inc.*, 78 F.4th 727 (5th Cir. 2023) ..................... 6-7

*United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, 2023 WL 2563239 (S.D.
    Tex. Feb. 10, 2023) ...................................................................................................................2

*United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2000)....................................7

*United States ex rel. Hueseman v. Pro. Compounding Ctrs. of Am., Inc.*, 664 F.
    Supp. 3d 722 (W.D. Tex. 2023)................................................................................................8

*United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023)........................................ 3-5

*United States v. Americus Mortgage Corp.*, 2013 WL 4829269 (S.D. Tex. Sept.
    10, 2013) ................................................................................................................................ 4-5

*United States v. Berkeley Heartlab*, 225 F. Supp. 3d 487 (D.S.C. 2016).....................................10

*United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255 (5th Cir. 2014).......................................5

*United States v. Lakeway Regional Medical Center, LLC*, 2020 WL 6146571
    (W.D. Tex. Feb. 13, 2020) ........................................................................................................2

*United States v. Marlin Med. Sols. LLC*, 579 F. Supp. 3d 876 (W.D. Tex. 2022) ..........................6

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176
    (2016).........................................................................................................................................4

## STATUTES, RULES, AND REGULATIONS

42 U.S.C. § 1983 .................................................................................................................4

False Claims Act .......................................................................................................... *passim*

Rule 9(b) ....................................................................................................................... *passim*

The Court should not allow the government to obscure the pleading defects in its case against Kathryn Petralia by lumping her together with other Kabbage executives (and with Kabbage itself, a distinct legal entity) and relying on allegations against "Defendants" or "Kabbage" generally. The government's Opposition provides no persuasive response to the pleading deficiencies identified in Ms. Petralia's individual motion to dismiss.[1]  First, the government identifies no allegations demonstrating Ms. Petralia's subjective knowledge that *any* submission by Kabbage to the Small Business Administration ("SBA") during the Paycheck Protection Program ("PPP") was false or that Ms. Petralia had *any* role in an alleged "fraudulent scheme."  Without such allegations, the government cannot establish Ms. Petralia's individual scienter under the False Claims Act ("FCA"), as the case law is clear that it may not state a claim against individual defendants through group pleading.  Second, although the government seeks to establish causation based on Ms. Petralia's *position* at Kabbage, such allegations are insufficient absent any "affirmative acts" she took in that position to cause the submission of false claims or statements to the SBA.  Third, the government has pointed to no allegations that any payments or benefits that Ms. Petralia received are directly traceable to funds paid by the United States, as required to sustain the common law claims.  For these additional reasons and those in the Joint Reply, the Complaint should be dismissed as to Ms. Petralia.

---

[1] As used herein, "Complaint" refers to the Government's Complaint in Intervention (ECF No. 40); "Motion" refers Ms. Petralia's individual Motion to Dismiss (ECF No. 65); "Joint Motion" refers to Mr. Frohwein, Kathryn Petralia, and Spencer Robinson's (collectively, "Defendants") joint Motion to Dismiss (ECF No. 66); and "Opposition" refers to the Government's Omnibus Opposition to Defendants' Motions to Dismiss (ECF No. 72).

# ARGUMENT[2]

## I.     The Complaint Fails To Allege That Ms. Petralia Acted With The Requisite Scienter

The Fifth Circuit has unequivocally held that "[g]roup pleading … does not satisfy Rule 9(b)." *Drywall Elements, LLC v. Edward Wolff & Assocs., LLC*, 2022 WL 4667997, at *5 n.10 (E.D. Tex. Sept. 30, 2022). "When multiple defendants are alleged to have committed fraudulent acts, a party claiming fraud 'must plead with sufficient particularity attribution of the alleged misrepresentations or omissions *to each defendant*; the plaintiff is obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud.'" *Hidden Values, Inc. v. Wade*, 2012 WL 1836087, at *4 (N.D. Tex. May 18, 2012) (emphasis added; citation omitted). Failure to do so is grounds for dismissal. *See, e.g., id.* at *4 (N.D. Tex. May 18, 2012) (dismissing complaint that "lump[ed] together" multiple defendants and referred to them "collectively as 'Counter-Defendants' and 'they' without distinguishing which entity or persons committed the various alleged fraudulent conduct").

That rule applies without exception to cases under the FCA. *See, e.g. U.S. ex rel. Frey v. Health Mgmt. Sys., Inc.*, 2023 WL 2563239, at *7-8 (S.D. Tex. Feb. 10, 2023) (dismissing FCA case that ran afoul of "the prohibition on group pleading" by "lumping the four corporate Defendants together"). In *U.S. v. Lakeway Regional Medical Center, LLC*, the court dismissed FCA claims, which rested on "shotgun" or "group" pleading, and rejected the government's "patently incorrect" approach because, among other reasons, "group pleading prevents [a] necessary element of a fraud allegation: each Individual Defendant's mental state with respect to

---

[2] Ms. Petralia incorporates by reference the legal arguments made in Mr. Frohwein's and Mr. Robinson's individual reply briefs, to the extent they relate to Ms. Petralia. Ms. Petralia also notes that although she raised venue and personal jurisdiction arguments in her individual Motion to Dismiss, she responds to them jointly with her co-defendants because the government responded to Defendants' venue and personal jurisdiction arguments together in its Omnibus Opposition.

the alleged fraud." 2020 WL 6146571, *2 (W.D. Tex. Feb. 13, 2020) (internal quotation marks omitted); *see also U.S. ex rel. Haight v. RRSA (Com. Div.), LLC*, 2020 WL 6163139, at *4 (N.D. Tex. Oct. 20, 2020) (noting that complaint cannot "lump all defendants together" and must instead "segregate the alleged wrongdoing of one from another.").

The government makes this precise error in the Complaint. It improperly lumps all Defendants together or imputes Kabbage's corporate knowledge to Ms. Petralia without making particularized allegations. *See* Petralia Mot. at 11-15, 18. The Opposition does not identify any allegations specific to Ms. Petralia that support a plausible inference regarding her subjective belief that submissions to the SBA during the PPP were false. It merely cites paragraphs from the Complaint that refer to "Defendants" or "Kabbage" collectively, Opp. 38-39, 55-57, 60-63, and then *argues* (in conclusory terms) that "[t]hese allegations do not improperly lump the Defendants' knowledge together nor do they impute Kabbage's generalized corporate knowledge to Petralia … but, instead, relate to her specifically." Opp. 62. Saying that does not make it so. And the government fails to offer anything else. The Complaint thus fails to plead Ms. Petralia's "knowledge and subjective beliefs" with respect to the falsity of statements submitted to the government—an essential element of FCA liability. *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023).

The government's other arguments are unavailing and, if anything, merely attempt to distract the Court from the lack of allegations regarding Ms. Petralia's scienter. The government incorrectly argues that Ms. Petralia asks the Court to "draw[] inferences in [her] favor." *See* Opp. 50. This is not true. Ms. Petralia asks the Court, as it must, to separate the chaff—the government's conclusory, generalized and impermissible "group pleading" allegations—from the wheat—the limited allegations specific to Ms. Petralia. Once separated, the Complaint does not

3

come close to pleading facts sufficient to establish Ms. Petralia's scienter, as required to meet the FCA's "rigorous" scienter standard. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 192 (2016).

The government is in no position to rely on *Greene v. DeMoss*, 2022 WL 3716201, at *3 (5th Cir. Aug. 29, 2022) for the proposition that "identical allegations do not necessarily defeat an otherwise sufficient pleading." *See* Opp. 56. The complaint in *Greene* did not attempt to leverage general allegations against a group of defendants, as the government has here; rather it made individualized allegations against each defendant. Accordingly, the court in *Greene* concluded only that "identical, *individual* allegations"—not group pleading—were proper. 2022 WL 3716201, at *3. *Greene* provides no help to the government here, given the Complaint's dearth of individual allegations against Ms. Petralia. Moreover, *Greene* involved an excessive force claim under 42 U.S.C. § 1983, which was not subject to the heightened pleading requirements of Rule 9(b) as is the case here. Thus, the government's repeated reliance on *Greene*, Opp. 56, 84, is therefore doubly misplaced.

Similarly, the government's reliance on *U.S. v. Americus Mortg. Corp.*, 2013 WL 4829269 (S.D. Tex. Sept. 10, 2013), for the proposition that it may plead scienter "generally" under Rule 9(b), is unavailing. *See* Opp. 57. The court in *Americus* concluded that the plaintiff had satisfied the requirements of Rule 9(b) because it "identif[ied] [the defendant] by name and explain[ed] his role in both companies and in the fraudulent scheme as a whole," including "identify[ing] the falsified certification submitted to [the government] at [the defendant's] direction." 2013 WL 4829269, at *8. Importantly, *Americus* pre-dates by a decade the Supreme Court's holding in *SuperValu*, the landmark case clarifying that "[t]he FCA's scienter element refers to [a defendant's] knowledge and *subjective* beliefs." 598 U.S. at 749 (emphasis added). Because the

4

court in *Americus* did not analyze whether the complaint included allegations regarding the defendant's subjective knowledge, it is inapplicable post-*SuperValu* to the question of whether the government has adequately pled scienter as to Ms. Petralia.[3]

Rather than respond to Ms. Petralia's substantive arguments or explain why it cites outdated law, the government instead attacks Ms. Petralia for "blam[ing]" her co-defendant. *See* Opp. 60, 63. But Ms. Petralia does no such thing. Ms. Petralia categorically rejects any suggestion that she is blaming anyone; in reality, her motion identifies yet another of the government's pleading deficiencies: the absence of any specific allegations in the Complaint with respect to *her* subjective knowledge of misconduct.

The government's procedural arguments—that Ms. Petralia improperly attached extrinsic exhibits to her motion that the Court may not consider in this posture—are also wrong.[4] *See* Opp. 60. To be clear, Ms. Petralia is not asking the Court to evaluate the sufficiency of the Complaint's allegations regarding scienter "as if it were a motion for summary judgment." *Id.* In evaluating a motion to dismiss, courts may consider exhibits that "are referred to in the plaintiff's complaint and are central to [its] claim." *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The exhibits attached to Ms. Petralia's motion to dismiss are central to the government's claim that Ms. Petralia was aware of the SALT and 100k errors, which the government argues is the reason the Court should conclude it has adequately pled scienter. The Complaint cites to no other evidence, but includes only selective portions of these communications, leaving out the complete exchanges and Ms. Petralia's reasonable responses.

---

[3] The government relies on *U.S. v. Bollinger Shipyards, Inc.,* 775 F.3d 255 (5th Cir. 2014) for a similar proposition. Opp. 56. That case also pre-dates *SuperValu* and is therefore inapplicable for the proposition that scienter may be pled generally under Rule 9(b).

[4] Exhibit 2 was erroneously referred to as Exhibit 3 in Ms. Petralia's Motion.

5

Indeed, it is telling that the government argues so vociferously in its Opposition that this Court should not consider the full context of those documents. As Ms. Petralia explained in her motion, the exhibits establish, without any inferences needing to be drawn in her favor, that the allegations are patently false. *See* Petralia Mot. 18-20.

## II.     The Complaint Fails To Plead Causation As To Ms. Petralia

The government argues in a conclusory fashion that Ms. Petralia was a "substantial factor in causing Kabbage and its Lender Partners to submit false and inflated claims for processing fees and inflated claims for loan forgiveness to SBA" and that the submission of the claims was "reasonably foreseeable or anticipated as a natural consequence of" her actions. Opp. 83-84. That theory overextends the FCA causation standard and points to no specific "affirmative acts" by Ms. Petralia that allegedly caused submission of false claims. *See U.S. v. Marlin Med. Sols. LLC*, 579 F. Supp. 3d 876, 886 (W.D. Tex. 2022) (FCA requires "'some sort of affirmative act' that causes or assists the presentation of a false claim"). The government attributes the actions of Kabbage and its lender partners to Ms. Petralia as if she were an omnipotent actor responsible for actions of others both within and outside the organization relating to technical details to which she was not privy. That theory is unsupported legally and does not pass muster under Rule 9(b).[5]

As Ms. Petralia explained in her motion, Petralia Mot. 11-14, the Complaint does not allege that Ms. Petralia took any "affirmative act that cause[ed] or assist[ed] the presentation of a false claim." *U.S. ex rel. Aldridge v. Corp. Mgmt., Inc.*, 78 F.4th 727, 741 (5th Cir. 2023) (quotation marks omitted). In response, the government cites various out-of-circuit cases to argue that, because Ms. Petralia supposedly had "unfettered power … to affirmatively stop fraudulent

---

[5] The government concedes that it does not allege that Ms. Petralia herself submitted any false claims or statements.

conduct," but failed to intervene, this suffices for causation. *See* Opp. 85. Allegations that a defendant—even a member of a company's c-suite—"exercise[d] control over" a company and "was involved in all aspects of the business," without allegations of affirmative acts, are insufficient. *Haight*, 2020 WL 6163139, at *5; *see also U.S. v. Villaspring Health Care Ctr., Inc.*, 2011 WL 6337455, at *10 (E.D. Ky. Dec. 19, 2011) (explaining that CEO's "direct and indirect control" were "not enough for the Court to connect the dots between his ownership and the specific conduct involved in the submission of a claim for reimbursement.").

Tellingly, the Complaint contains no support for the premise that Ms. Petralia had "unfettered power" at Kabbage, nor any allegation that she chose not to exercise such power when presented with instances of fraudulent conduct. The government points to no allegations that Ms. Petralia approved, was involved in, or instructed anyone at Kabbage regarding the submission of *any* specific loan applications or other documents to the SBA—because there are none. *See U.S. ex. rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2000) (requiring FCA claims, including causation, to be pled with specificity). The government instead relies on conclusory allegations about Ms. Petralia's position and responsibilities at Kabbage and her purported knowledge of "systemic errors in Kabbage's loan processing." Opp. 84. But these are not allegations of any "wrongful acts" that caused the submission of fraudulent statements, as the government suggests. *See id.*

The only Fifth Circuit case the government cites for its contention that causation is adequately pled as to Ms. Petralia is *Aldridge*, but that case is easily distinguishable. In *Aldridge*, the court concluded that, by executing an agreement and failing to inquire about management fees, the defendant had committed an "'affirmative act' that facilitated ... false claims." 78 F.4th at 741. Here, however, the government does not allege that Ms. Petralia herself committed any

7

"affirmative act" akin to executing an agreement.  Rather, the government alleges that, at most, Ms. Petralia—in consultation with another Kabbage employee—decided not to take a single employee's suggestion to pause all PPP applications in light of that employee's general fraud concerns.  *See* Opp. 85 (citing Compl. ¶¶ 266-267).  This is insufficient.  First, the Complaint does not allege that Ms. Petralia had "unfettered power" to make that decision, and, moreover, the Complaint paragraph cited in the government's Opposition does not allege that Ms. Petralia "brush[ed] off" the employee, as the Opposition suggests.  *Id*.  Rather, that paragraph alleges that, at a company-wide Town Hall meeting, in response to a question by Ms. Petralia, an employee explained that "improvements to the system would proceed on 'parallel paths' with application acceptance."  Compl. ¶ 267.  In other words, the Complaint alleges that Ms. Petralia deferred to others with relevant responsibility to implement necessary improvements in real time—a far cry from any "affirmative acts" to cause submission of false claims.

In sum, there are simply no allegations in the Complaint that tie any "affirmative act" by Ms. Petralia to any submission to the SBA of allegedly fraudulent claims or statements. Accordingly, the Complaint fails to adequately allege that Ms. Petralia "was (1) a substantial factor in inducing providers to submit claims for reimbursement, and (2) if the submission of claims for reimbursement was reasonably foreseeable or anticipated as a natural consequence of [a] defendant['s] conduct."  *U.S. ex rel. Hueseman v. Pro. Compounding Ctrs. of Am., Inc.*, 664 F. Supp. 3d 722, 752 (W.D. Tex. 2023) (citation omitted).[6]

---

[6] Additionally, the opposition provides no response to Ms. Petralia's arguments that allegations related to the conduct of *others* at Kabbage as intervening actors, further highlighting the tenuous connection between Ms. Petralia and Kabbage's submission of claims and statements to the SBA. *See* Petralia Mot. at 14.

### III. The Complaint Fails to Plead Common Law Claims as to Ms. Petralia

The government argues it has adequately pleaded its common law claims but fails to address the central, fatal flaw with its allegations: It has not alleged any benefit or payments received by Ms. Petralia that are directly traceable to funds paid by the United States.

As to the unjust enrichment claim, the Opposition merely repeats the government's allegations that the SBA paid claims *to Kabbage* for fraudulently inflated processing fees and applications with false certifications. *See* Opp. 99-100. The central argument to support the government's unjust enrichment claim is that "the benefit of the processing fees was conferred on Defendants," *id*. at 100, but, without more, this allegation fails to meet Rule 12(b)(6)'s pleading standards. *See Fulcrum Credit Partners LLC v. Strategic Cap. Res., Inc.*, 2011 WL 13104241, at *5 (W.D. Tex. Mar. 15, 2011) (collecting cases dismissing enrichment claims because benefit received was too attenuated or indirect). As explained in Ms. Petralia's motion, the PPP processing fees and any associated benefits to which the government points cannot "clearly be traced" to any financial gain received by Ms. Petralia due to her employment at Kabbage (i.e., her executive salary, earnings from the sale of Kabbage to American Express, or her retention bonus). *See* Petralia Mot. 23-24; *see also U.S. ex rel. Silva v. VICI Marketing, LLC*, 361 F. Supp. 3d 1245, 1256-1258 (M.D. Fla. 2019) (dismissing unjust enrichment and mistaken payment claims based on conclusory allegations that defendant directly benefited and "that the mistakenly-paid funds flowed through" defendant).

The government cites *Silva* to argue that "[t]he benefit need not flow directly from the government to the defendant for the government to allege an unjust enrichment claim." Opp. 99 (citing 361 F. Supp. 3d at 1256). But *Silva* in particular underscores the government's failure to plead that Ms. Petralia was someone "*to whom the funds flowed*," regardless of whether the funds were "directly given" to them. 361 F. Supp. 3d at 1256 (emphasis added). In other words, the

9

government's unjust enrichment claim against Ms. Petralia cannot survive because the Complaint fails to allege that Ms. Petralia is someone to whom those funds—the PPP processing fees—actually flowed. *Texas v. Am. Tobacco Co.* 14 F. Supp. 2d 956, 972 (E.D. Tex. 1997) (dismissing claim for unjust enrichment where plaintiff failed to allege defendants "received the primary and direct benefits of the payment of [smokers'] medical expenses" and "the alleged benefit enjoyed by Defendants [was] too attenuated and indirect to find support under the theory of unjust enrichment"). Likewise, the government relies on *U.S. v. Berkeley Heartlab*, Opp. 99-100, but there, the government plausibly alleged a direct connection between government payments and the defendant where the defendant's "salary and bonuses were directly tied to [the corporate entity's] profits." 225 F. Supp. 3d 487, 503 (D.S.C. 2016). Here, the government merely speculates that PPP processing fees increased Kabbage's sale price.

The same reasoning applies with respect to the government's payment by mistake claim, as the government again relies on allegations about Defendants' "operational control over Kabbage's PPP participation," while ignoring the absence of allegations that any "payments flowed through" to Ms. Petralia or that she personally benefitted from the relevant transactions. Opp. 101-102; *see* Petralia Mot. 25.

## CONCLUSION

For the reasons set forth above, in the Joint Reply, and in the opening motions, the Complaint should be dismissed with prejudice in its entirety as to Ms. Petralia.

Dated: May 9, 2025

| | |
|---|---|
| Respectfully submitted, | Christopher E. Babbitt (*pro hac vice*) |
| | Michaela S. Wilkes Klein (*pro hac vice*) |
|   */s/ Melissa R. Smith* | Wilmer Cutler Pickering Hale and Dorr LLP |
| Melissa R. Smith | 2100 Pennsylvania Avenue NW |
| Gillam & Smith LLP | Washington, DC 20037 |
| 303 South Washington Avenue | Telephone: (202) 663-6000 |
| Marshall, TX 75670 | Fax: (202) 663-6363 |
| Telephone: (903) 934-8450 | christopher.babbitt@wilmerhale.com |
| Fax: (903) 934-9257 | michaela.wilkesklein@wilmerhale.com |
| melissa@gillamsmithlaw.com | |
| | George P. Varghese (*pro hac vice*) |
| Anjan Sahni (*pro hac vice*) | Wilmer Cutler Pickering Hale and Dorr LLP |
| Wilmer Cutler Pickering Hale and Dorr LLP | 60 State Street |
| 7 World Trade Center, 250 Greenwich Street | Boston, MA 02109 |
| New York, NY 10007 | Telephone: (617) 526-6000 |
| Telephone: (212) 230-8800 | Fax: (617) 526-5000 |
| Fax: (212) 230-8888 | george.varghese@wilmerhale.com |
| anjan.sahni@wilmerhale.com | |
| | ***Counsel for Kathryn Petralia*** |

**CERTIFICATE OF SERVICE**

  I hereby certify that on May 9, 2025, I caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Dated: May 9, 2025            Respectfully Submitted,

                  _/s/ Melissa R. Smith_
                  Melissa R. Smith